# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| JANE DOE, | Civil No.    12-cv-0689-MMA (DHB) |
|---|---|
| Plaintiff, | |
| | **ORDER RESOLVING (1) JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE AND (2) SUPPLEMENTAL JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |
| v. | |
| THE CITY OF SAN DIEGO, et al., | |
| Defendants. | **[ECF Nos. 56, 64]** |

On January 15, 2013, Plaintiff Jane Doe and Defendant City of San Diego filed a Joint Motion for Determination of Discovery Dispute ("Joint Motion"). (ECF No. 56.) The parties' dispute concerns requests for production of documents served by Plaintiff on the City. The City has refused to produce documents in response to numerous requests absent an order from the Court.

On February 8, 2013, Plaintiff and the City filed a Supplemental Joint Motion for Determination of Discovery Dispute ("Supplemental Joint Motion"). (ECF No. 64.) In the Supplemental Joint Motion, Plaintiff and the City advised the Court that further meet and confer efforts subsequent to the filing of the Joint Motion had resulted in the parties having reached a resolution as to some, but not all, of the disputed requests.

/ / /

On February 11, 2012, the Court conducted a Discovery Conference. (*See* transcript of proceedings, ECF No. 76.) Appearing before the Court were: Joseph Dicks, Esq., and Linda Workman, Esq., counsel for Plaintiff; Christina Milligan, Esq., and Keith Phillips, Esq., counsel for the City[1]; Kevin Osterberg, Esq., counsel for Defendant Anthony Arevalos; and Shari Lawson, Esq., counsel for non-party witness San Diego District Attorney's Office ("D.A.'s Office"). The purpose of the Discovery Conference was to discuss (1) issues related to the D.A's Office's production of documents responsive to a subpoena issued by Plaintiff and (2) the issues that remained in dispute concerning the Joint Motion and Supplemental Joint Motion and the City's refusal to produce documents.

On February 20, 2013, Plaintiff filed an *ex parte* request for additional oral argument concerning the disputed issues. (ECF No. 74.) Defendants opposed Plaintiff's request on February 27, 2013. (ECF No. 77.) The Court granted Plaintiff's request for additional oral argument (ECF No. 78), and on March 7, 2013, the Court held an additional Discovery Conference. Appearing before the Court at the March 7, 2013 Discovery Conference were: Joseph Dicks, Esq., and Linda Workman, Esq., counsel for Plaintiff; Christina Milligan, Esq., and Keith Phillips, Esq., counsel for the City Defendants; and Kevin Osterberg, Esq., counsel for Defendant Arevalos.

After a thorough review of the parties' arguments and evidence, the Court issues the following Order to resolve what the Court believes are the remaining issues in dispute concerning Plaintiff's document requests to the City.

## I. BACKGROUND

**A.    Plaintiff's Allegations**

In her operative Second Amended Complaint (ECF No. 35), Plaintiff alleges various claims against the City Defendants and Defendant Arevalos arising from a March 8, 2011 sexual assault committed by Defendant Arevalos. Plaintiff seeks compensatory and punitive

---

[1] Ms. Milligan and Mr. Phillips are also counsel for Defendants San Diego Police Department ("SDPD" or the "Department"), Kevin Friedman, David Bejarano, William Lansdowne, Danny Hollister and Rudy Tai. These Defendants and the City are collectively referred to herein as the "City Defendants."

damages against Defendant Arevalos and his supervisors within the Department who allegedly "knew about [Defendant Arevalos'] predatory sexual behavior and yet continued to allow him to violate the vulnerable women he encountered on his nightly patrols." (*Id.* at 2:10-11.)[2] Plaintiff also seeks compensatory damages for alleged civil rights violations committed by the City and its police department. (*Id.* at 2:11-13.) Lastly, Plaintiff seeks an injunction requiring that an independent monitor oversee and reform the operation of the Department. (*Id.* at 2:13-15.)

Plaintiff's claims are largely premised upon the theory that the City "failed to properly test, screen, examine and evaluate" Defendant Arevalos prior to his hiring as a police officer in 1993, and, as a consequence, the City failed to identify him as a "dangerous sexual predator." (*Id.* at 3:25-4:9.) Plaintiff also alleges that Defendant Arevalos' peers and supervisors, including the other individually named Defendants, followed "unwritten official polices, customs and practices [that] allowed [Defendant Arevalos] and other sworn officers to feel entitled to repeatedly stalk, molest, harass, kidnap, falsely arrest, falsely imprison, sexually assault and batter, and violate the civil rights of female citizens of the City of San Diego without fear of reprisal by their peers, supervisors, superiors or the District Attorney's office." (*Id.* at 4:19-27.)

Plaintiff asserts the following causes of action in her Second Amended Complaint: sexual assault; sexual battery; false arrest; false imprisonment; violation of California Civil Code §§ 51.7, 52.1 and 52.4; violation of federal civil rights under 42 U.S.C. §§ 1983, 1985(2) and (3), 1986 and 3789d; negligence; and intentional infliction of emotional distress.[3] (*Id.* at 19:20-34:11.)

/ / /

/ / /

---

[2] Page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic case filing system.

[3] With two exceptions, Plaintiff alleges each cause of action against all Defendants. Plaintiff alleges her 42 U.S.C. § 3789d cause of action against the City only, and she does not allege her negligence cause of action against Defendant Arevalos.

**B.      Plaintiff's Requests for Production of Documents**

Plaintiff served the City with her first set of requests for production of documents on September 17, 2012, seeking sixty-five (65) categories of documents.  (ECF Nos. 56-2 at 2:11-13; 56-4.)  Plaintiff served the City with her second set of requests for production of documents on October 2, 2012, seeking an additional sixty-two (62) categories of documents.  (ECF Nos. 56-2 at 2:14-16; 56-5.)

On November 6, 2012, the City served its responses to Plaintiff's first and second sets of requests for production of documents, as well as 577 pages of documents.  (ECF No. 56-2 at 2:17-18; 56-6.)  In conjunction with its responses, the City also served the declaration of David Ramirez, SDPD's Executive Assistant Chief of Police, to support the City's claim that certain documents requested by Plaintiff are subject to the executive and official information privileges.[4]  (ECF No. 56-6 at 81-86.)

On December 21, 2012, Plaintiff's counsel sent two meet and confer letters concerning various objections asserted by the City and the City's refusal to produce certain categories of documents.  (ECF Nos. 56-8; 56-9.)  In-person meetings of counsel were also held on January 7 and 8, 2013, to further meet and confer regarding the disputed categories of documents.  (ECF No. 56-2 at 2:22-24.)

On January 11, 2013, the City produced a disk containing additional responsive documents and supplemented its responses to many of the requests contained in Plaintiff's first set of requests for production of documents.[5]  (ECF Nos. 56-2 at 2:25-226; 56-10.)  However, it is Plaintiff's contention that "the majority of key documents requested have still failed to be produced."  (ECF No. 56-2 at 2:27.)  Having failed to informally resolve their disputes, Plaintiff and the City filed their Joint Motion on January 15, 2013.  (ECF No. 56.)  On January 30, 2013, the parties engaged in an additional meet and confer conference which, to some extent, has narrowed the discovery issues in dispute.  (ECF No. 64 at 2:15-16.)

---

[4] The Court's discussion of Assistant Chief Ramirez's declaration and the executive and official information privileges is contained in Section II.A., *infra*.

[5] The number of pages contained in the City's January 11, 2013 supplemental document production has not been provided to the Court.

Plaintiff seeks to compel the City to produce any and all documents that refer, relate to, evidence or constitute:

- <u>Internal communications</u>: reports or communications by Defendants Tai or Hollister which refer or relate to Defendant Arevalos, including all internal e-mail, memorandum or other internal communications relating thereto (Request Nos. 29-30);

- <u>Internal investigations of wrongdoing by Defendant Arevalos</u>: any investigations into alleged on-the-job wrongdoings by Defendant Arevalos from the date of his initial hire to the present, including all internal e-mail, memorandum or other internal communications relating thereto (Request No. 31);

- <u>Traffic stop analyses</u>: studies, analyses or compilations, as well as the raw or underlying data related thereto, regarding the demographic make-up of the traffic stops initiated by Defendant Arevalos for any period of time that Defendant Arevalos was employed by the City, including all internal e-mail, memorandum or other internal communications relating thereto (Request No. 32);

- <u>Policies and procedures</u>: the City's police department policies and procedures manuals in effect from January 1990 to the present (Request No. 36);

- <u>Union contracts</u>: the City's contract(s) with any and all unions representing any and all members of the City's police department from January 1990 to the present (Request No. 37);

- <u>Employee misconduct regulations</u>: the rules, regulations, policies or other guidelines affecting the rights of any and all of the City's police department employees regarding allegations of misconduct against them from January 1990 to the present (Request No. 38);

- <u>Psychologist reports</u>: reports, recommendations, analyses, communications or requests for information authored by Michael Mantell, former SDPD Chief Psychologist, regarding (1) Defendant Arevalos, or (2) the nature, extent, increase, frequency or reasons behind any misconduct complaints against SDPD personnel for the period January 1990 to the present (Request Nos. 39-40);

- <u>Citizen complaint rule changes</u>: any changes, modifications or amendments to any and all rules, policies, procedures or practices relating to the handling of citizen, peer or supervisory complaints against SDPD employees, including all internal e-mail, memorandum or other internal communications relating thereto, from the period January 1990 to the present (Request No. 58);

- <u>Anti-corruption rule changes</u>: any changes, modifications, amendments to, or elimination of, the SDPD's Anti-Corruption or Professional Standard's Units, including all internal e-mail, memorandum or other internal communications relating thereto, from the period January 1990 to the present (Request No. 59);

12cv689-MMA (DHB)

- <u>Officer personnel files</u>: the SDPD personnel files of Defendants Arevalos, Friedman, Tai and Hollister, and non-parties Sergeant Kenneth Davis and Officers Arthur Perea, Daniel Dana, Thomas Broxterman, James Zirpolo and Gib Ninness (Request Nos. 66-75);

- <u>Mental health records</u>: psychological, psychiatric or other mental health evaluations, testing or assessments performed on Defendants Arevalos, Friedman, Tai and Hollister, and non-parties Sergeant Davis and Officers Perea, Dana, Broxterman, Zirpolo and Ninness from the respective dates that the City first began to evaluate or consider them for a position with the City to the present (Request Nos. 20, 76-84);

- <u>Complaints against officers</u>: complaints made against Defendants Friedman, Tai, Hollister, Bejarano and Lansdowne, and non-parties Sergeant Davis and Officers Dana, Broxterman, Zirpolo and Ninness, by citizens, peers, supervisors or others, from their respective initial hire dates to the present, including all internal e-mail, memorandum or other internal communications relating thereto (Request No. 22, 85-94)[6];

- <u>Officer awards and punishments</u>: awards, commendations, certificates, licenses, promotions, demotions, sanctions, punishments, reprimands or suspensions of Defendants Arevalos, Friedman, Tai or Hollister, or non-parties Sergeant Davis or Officers Perea, Dana, Broxterman, Zirpolo or Ninness (Request Nos. 35, 95-103);

- <u>Ticket fixing scandal</u>: Defendant Friedman's ticket fixing scandal, including but not limited to Officer Zirpolo's police report thereof (Request No. 106);

- <u>Sexual misconduct complaints against officers</u>: complaints by any member of the public, or the investigation thereof, for sexual harassment, sexual misconduct, sexual assault, sexual battery, sexual abuse, or any crime related thereto, against an on-duty SDPD officer, for the period 1993 to the present (Request No. 107);

- <u>Communications</u>: conversations or communications between (1) Javier Cota and Defendant Lansdowne, or (2) Plaintiff and Defendant Arevalos (Request Nos. 108-109);

- <u>Sexual misconduct investigations</u>: any and all SDPD investigations, internal or otherwise, into the allegations of sexual misconduct perpetrated by SDPD officers and/or Defendant Arevalos, as set forth in the civil complaints against the City brought by (1) Sergeant Javier Cota, (NLS), (2) Emma M., (3) La Toshia Ann Thompson, (4) Clark Wong, or (5) Jane Roe (Request Nos. 113-117); and

- <u>Records regarding Guaderramas</u>: (1) allegations of sexual misconduct perpetrated by Alex Guaderrama, (2) any alleged preferential treatment of Alex Guaderrama by arresting officers during his arrest for sexual battery and vandalism on August 21, 2012 as a result of his father's employment at the Department, or (3) Captain Manny Guaderrama's personnel file (Request Nos. 124-126).

---

[6] Request Nos. 22 and 85 are duplicative.

Plaintiff and the City agreed on the record during the February 11, 2013 Discovery Conference to further meet and confer regarding several additional categories of disputed documents. Specifically, the parties agreed to meet and confer regarding Request Nos. 61-64 and 123.[7] (ECF No. 76 at 58:14-59:20; 63:3-12.) Thus, at this time the Court does not address the City's objections to these requests, nor does the Court order the City to produce documents responsive to these requests. In the event the parties are unable to resolve their disputes concerning these requests after further meet and confer efforts they may bring the remaining disputes to the Court's attention.

## II. DISCUSSION

The majority of the documents requested in this case fall into the same general categories of documents requested by the plaintiff in *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995). In that 42 U.S.C. § 1983 excessive force case, the plaintiff had requested documents including "police department internal affairs records, the officer-defendants' personnel files, psychological and physical health records of the officer-defendants, citizen complaints, and police guidelines, directives, and policy statements." *Soto*, 162 F.R.D. at 609. In the instant case, virtually all of the disputed requests (listed above) fall into one or more of these loose categories of documents. The notable exception is that Plaintiff also seeks records related to various non-party police officers.

The City asserts the following objections to some, or all, of the disputed document requests: (a) executive and official information privileges; (b) relevance; (c) invasion of

---

[7] These requests seek documents that refer, relate to, evidence or constitute:

- Officer journals: the journals of Defendants Friedman, Tai or Hollister from their respective initial hire dates to the present (Request Nos. 61-63);

- Identification of Defendant Arevalos' co-workers: the names and current positions of Defendant Arevalos' partners, supervisors and peers at the Southern Division during the period of time Defendant Arevalos was stationed at that division (Request No. 64); and

- Organizational chart: the Department's organizational chart showing chain of command (Request No. 123).

privacy; (d) vague, ambiguous and overbroad; and (e) attorney work product.[8] The Court will analyze each category of documents in turn, including the City's objections thereto. As an initial matter, however, the Court will address the City's objection that the majority of the disputed requests[9] improperly seek information protected by the executive and official information privileges.

## A. Executive and Official Information Privileges

"Assertions of privilege in federal question cases are governed by federal common law." *Dowell v. Griffin*, 275 F.R.D. 613, 616 (S.D. Cal. 2011) (citing FED. R. EVID. 501); *see also Hampton v. City of San Diego*, 147 F.R.D. 227, 230 (S.D. Cal. 1993) ("In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law.") (citing *Kerr v. U.S. Dist. Ct.*, 511 F.2d 192, 197 (9th Cir. 1975)); *Kelly v. City of San Jose*, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987) ("State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases.") (citing *Breed v. U.S. Dist. Ct.*, 542 F.2d 1114, 1115 (9th Cir. 1976)).

The City argues that California privilege laws are instructive. However, the Court disagrees. "California rules for discovery and privileges are fundamentally inconsistent with those of the federal rules." *Miller v. Panucci*, 141 F.R.D. 292, 299 (C.D. Cal. 1992). "Applying California [privilege] law would result in Plaintiffs' access to police files being severely limited." *Id.* at 298; *see also Doe v. Gill*, 2012 U.S. Dist. LEXIS 42159, at *9-10 (N.D. Cal. Mar. 27, 2012) (rejecting defendants' California-based privilege argument); *Soto*, 162 F.R.D. at 609 (finding "as a threshold matter [that] California statutory privileges would not apply in this case and that privileges would be determined under federal common law."). In addition:

---

[8] To the extent the City asserted objections on other grounds, the Court will not address those not briefed by the City in the instant Joint Motion and only asserted through blanket objections. The City has waived these objections by failing to provide reasons for the objections as required under Federal Rule of Civil Procedure 34(6)(2)(B). *See Darraj v. Cnty. of San Diego*, 2012 U.S. Dist. LEXIS 168968, at *2 n.1 (S.D. Cal. Nov. 28, 2012).

[9] The City does not assert that Request Nos. 36-38, 58-59, 107-109, 113-117 or 124-125 are protected by the executive and official information privileges.

It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly*, 114 F.R.D. at 656.

Thus, the Court concludes that questions of privilege in this case will be governed by federal common law.

"Federal common law recognizes a qualified privilege for official information." *Dowell*, 275 F.R.D. at 616 (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990)). "For purposes of the privilege, government personnel files are considered official information." *Id.* (citing *Sanchez*, 936 F.2d at 1033). The Ninth Circuit has adopted a balancing test that courts must perform when determining whether a government personnel file falls within the official information privilege. *Id.* "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Sanchez*, 936 F.2d at 1033-34 (citing *Jepsen v. Fla. Bd. of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980); *Zaustinsky v. Univ. of Cal.*, 96 F.R.D. 622, 625 (N.D. Cal. 1983)). "In the context of civil rights suits against police departments, this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" *Darraj*, 2012 U.S. Dist. LEXIS 168968, at *9 (quoting *Kelly*, 114 F.R.D. at 661).

This Court has previously outlined the procedures that must be followed for invoking the official information privilege. *See Hampton*, 147 F.R.D. at 230-31. In so doing, the Court adopted, with certain modifications, the procedural requirements set forth in *Kelly* and *Miller*. *See id.*

A party that receives a discovery request that would reach material that it believes is covered by the official information privilege must . . . serve and file an objection that invokes the official information privilege by name. The party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege.

*Kelly*, 114 F.R.D. at 669.

"The asserting party must sufficiently identify the documents in a privilege log so as to afford the requesting party an opportunity to challenge the assertion." *Hampton*, 147 F.R.D. at 230 (citing *Miller*, 141 F.R.D. at 300). "The privilege log may be the subject of a stipulated protective order." *Id.*

"[I]n order to trigger the Court's balancing of interests, the party opposing disclosure must make a substantial threshold showing by submitting a declaration from a responsible official with personal knowledge of the police department's internal investigatory system." *Stewart v. City of San Diego*, 2010 U.S. Dist. LEXIS 124581, at *3 (S.D. Cal. Nov. 24, 2010) (citing *Soto*, 162 F.R.D. at 613); *see also Kelly*, 114 F.R.D. at 669 ("[T]he party also must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration.").

> The affidavit or declaration from the agency official must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly*, 114 F.R.D. at 670; *see also Miller*, 141 F.R.D. at 300.

"If the party invoking the privilege fails to satisfy this threshold burden the documents should be disclosed." *Darraj*, 2012 U.S. Dist. LEXIS 168968, at *10 (citing *Soto*, 162 F.R.D. at 613). "If the threshold showing requirements are met, the court must weigh whether confidentiality outweighs the requesting party's need for the information." *Id.* (citing *Hampton*, 147 F.R.D. at 231; *Kelly*, 114 F.R.D. at 657-58).

> Once the party asserting the privilege meets the threshold burden, the court will review the documents in light of the balancing test articulated by the court in *Kelly*, which includes, but is not limited to: (1) The extent to which disclosure

> will thwart the governmental process by discouraging citizens from giving the government information; (2) The impact upon persons who have given information of having their identities disclosed; (3) The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) Whether the information sought is factual data or evaluative summary; (5) Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) Whether the police investigation has been completed; (7) Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) Whether the plaintiff's suit [is] not frivolous and brought in good faith; (9) Whether the information sought is available from discovery or through other sources; (10) The importance of the information sought to the plaintiff's case.

*Stewart*, 2010 U.S. Dist. LEXIS 124581, at \* 3-4 (citing *Kelly*, 114 F.R.D. at 663).

Here, the City supports its assertion of the official information privilege with a declaration from David Ramirez, Executive Assistant Chief of Police. (ECF No. 56-1.) However, the Court finds that the statements in Assistant Chief Ramirez's declaration are insufficient to properly invoke the official information privilege and that, as a result, the Court need not engage in the ten-factor balancing test articulated by the *Kelly* court.

Initially, the City does not adequately demonstrate that it has collected all the documents at issue or that Assistant Chief Ramirez has personally reviewed the materials. Although Assistant Chief Ramirez states that he has reviewed the personnel files and investigatory files from citizen complaints, if any, against the individual Defendants and the various non-party officers about whom Plaintiff seeks documents (*id.* at 23:9-15), the Court notes that this statement conflicts with the City's subsequent representation that only the personnel files of Defendants Tai, Hollister, Friedman and Arevalos have been gathered and redacted and are ready for production, and that "[t]he balance of the requested personnel files have yet to be gathered or redacted." (ECF No. 64 at 3:7-9.) Thus, the City has failed to properly invoke the official information privilege with respect to the personnel files of non-party officers Davis, Perea, Dana, Broxterman, Zirpolo and Ninness.

More importantly, Assistant Chief Ramirez's declaration fails to adequately satisfy the final three threshold requirements: "(3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order

12cv689-MMA (DHB)

would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made." *Kelly*, 114 F.R.D. at 670. Instead, the declaration merely contains generalized statements such as:

- "When information obtained in [administrative] investigations can be sought, obtained and used for purposes other than the specific complaint being investigated, the ability of Internal Affairs to conduct a fair and thorough administrative investigations [sic] of officers is undermined. Officers involved in an investigation, who know that the information sought from them will or can be released for purposes other than the subject investigation, can be expected to be reluctant and perhaps less than forthright in providing the information necessary for a thorough investigation." (ECF No. 56-1 at 24:10-16.)

- "Cooperation by members of the public is often dependent upon . . . assurances [of anonymity], which, in turn, are dependent upon the capabilities of the Department to keep sources of information confidential and to fulfill the representations made to members of the public concerning confidentiality. Without such assurances, it is apparent to me that the Department, including the Internal Affairs Unit, would not receive the benefit of much of the information provided by citizen complainants and witnesses." (*Id.* at 24:21-24.)

- "In addition to the prospects of discouraging officers and citizens from providing information and violating the privacy rights of those who have provided information to the Department, indiscriminate disclosure and uncontrolled dissemination of confidential records kept by the Department can also disrupt the vital, day-to-day operations of the Department, divert personnel from their regular duties, erode the integrity and security of such records, affect morale of many departmental employees, consume inordinate time, expense, and resources, and frustrate the legitimate, specific purposes of compiling and maintaining such records." (*Id.* at 25:5-11.)

- "Even if the requested documents in this matter, if any exist, are released pursuant to a carefully crafted protective order, the disclosure of the requested items will create a substantial risk of harm to significant governmental and privacy interests." (*Id.* at 26:7-9.)

In essence, the City relies heavily on the general claim that disclosure of the internal affairs files and officer personnel files would have a chilling effect on the Department's internal investigation process. This "'chilling effect' argument, though, has been considered and rejected by numerous courts." *Gill*, 2012 U.S. Dist. LEXIS 42159, at *12. For example, the *Kelly* court concluded that "defendants cannot meet their burden simply by asserting, *without empirical support*, that officers will refuse to cooperate with Internal Affairs

investigations if their statements are subject to even limited disclosure." 114 F.R.D. at 672 (emphasis added); *see also Watson v. Albin*, 2008 U.S. Dist. LEXIS 120243, at \*6-7 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing *Soto*, 162 F.R.D. at 613-14; *Kelly*, 114 F.R.D. at 672); *Vu v. Clark*, 2006 U.S. Dist. LEXIS 85251, at \*6 (N.D. Cal. Nov. 15, 2006) ("There is no support for an argument that disclosure would lead to a breakdown of the [internal affairs] investigation system and in the past, courts have struck down such reasoning.") (citing *Soto*, 162 F.R.D. at 613-14; *Kelly*, 114 F.R.D. at 672).

Not only has the City's argument that potential limited disclosure would somehow chill the truthful and complete participation of officers and citizens involved in citizen complaint investigations been oft-rejected, but the argument is fundamentally flawed. As discussed by Magistrate Judge Dembin of this district in *Dowell*, the potential for disclosure of these files will likely have a *positive* effect on the truth-finding process:

> [T]he Court is not convinced that the privacy risk would dissuade potential witnesses from providing accurate information. Rather, the potential for disclosure likely would have the effect, if any, to encourage the complainant and any witnesses to tell the truth, as they may later be called to testify in a civil action. Further, the officers named in the complaint would likewise be encouraged to tell the truth because officers are generally indemnified from liability in civil actions, and the greater disincentive to veracity is the possibility of discipline or termination.

275 F.R.D. at 618 (citing *Estate of Bui v. City of Westminster Police Dep't*, 244 F.R.D. 591, 596 (C.D. Cal. 2007)); *see also Kelly*, 114 F.R.D. at 661 (suggesting that "there has been substantial exaggeration of the size of the harm that limited disclosure might do to concededly legitimate law enforcement interests."); *Spell v. McDaniel*, 591 F. Supp. 1090, 1117 (E.D. N.C. 1984) ("[T]he court simply does not accept the proposition that fellow police officers are more likely to be untruthful if they know potential plaintiffs might receive their reports in later litigation.") (citing *Crawford v. Dominic*, 469 F. Supp. 260, 264-65 (E.D. Pa. 1979)).

/ / /

The City also argues that disclosure of officers' personnel files would violate their privacy and jeopardize the safety of the officers and their families. (ECF No. 56-1 at 25:12-17.) However, "claims pertaining to the privacy interests of police officers are closely scrutinized when the documents at issue are related to the officers' work with the police department." *Watson*, 2008 U.S. Dist. LEXIS 120243, at *6-7 (citing *Soto*, 162 F.R.D. at 616 (suggesting that internal investigation files are not protected by right of privacy when documents "related simply to the officers' work as police officers")). Moreover, the Protective Order issued in this action (*see* ECF No. 83) and appropriate redactions of the officers' sensitive personal information will prevent any threat to the safety of the officers and their families. *See Stewart*, 2010 U.S. Dist. LEXIS 124581, at *8 ("[A]ny concerns the Defendants may have can be alleviated by an appropriate protective order, as well as the redaction of any sensitive personal information (e.g. social security numbers, addresses, phone numbers, etc.).").

Next, "general 'harm to the public interest' objections" are insufficient. *Miller*, 141 F.R.D. at 301. As in *Miller*:

> Defendants . . . do not *specifically* describe how disclosure of the requested information in this case would be harmful. As noted earlier, a general claim of harm is insufficient to overcome the burden placed on the party resisting disclosure. In particular, Defendants have failed to describe how disclosure under a tailored protective order would harm a significant government interest and how much harm would be done to those interests by disclosure in this particular case.

141 F.R.D. at 301 (emphasis added) (citing *Kelly*, 114 F.R.D. at 670); *see also Kelly*, 114 F.R.D. at 672 ("[A] general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure.").

During the March 8, 2013 Discovery Conference, Defendants relied on *Mueller v. Walker*, 124 F.R.D. 654 (D. Or. 1989), in arguing that any evaluative summaries or investigator conclusions contained in the City's internal affairs files are protected from disclosure. However, the *Mueller* court did not appear to require the threshold showing required in this district, which the City has failed to meet. *See id.* at 656-57 (considering ten-factor balancing test without addressing threshold showing requirements set forth in *Kelly*).

Thus, *Mueller* is not persuasive.

Moreover, "to apply a *per se* rule exempting supervisory evaluations from discovery would probably bar scrutiny of highly relevant evidence which cannot be adequately developed in any other way." *Spell*, 591 F. Supp. at 1118 (citing *Crawford*, 469 F. Supp. at 265). "In a § 1983 custom and practice case such as this, internal supervisory evaluations may be the best evidence available of the state of mind of defendant supervisors and of other agents of the municipality and police department responsible for personnel and policy decisions. [Citation omitted.] Such evaluations are clearly relevant to determining what the defendants knew and when they knew it." *Id.*

In conclusion, the Court finds that the City has failed to make the required threshold showing to invoke the official information privilege. Therefore, the City's objections based upon the executive and official information privileges are **OVERRULED**.

**B.     Internal Affairs Documents**

Several of Plaintiff's requests seek documents that, if they exist, might be contained in the Department's internal affairs records. For example, Plaintiff seeks documents pertaining to internal investigations[10] of wrongdoing by Defendant Arevalos (Request No. 31), complaints made against Defendants Friedman, Tai, Hollister, Bejarano and Lansdowne (Request Nos. 22, 85-89), complaints made against non-parties Sergeant Davis and Officers Dana, Broxterman, Zirpolo and Ninness (Request Nos. 90-94), sexual misconduct complaints against any on-duty SDPD officer (Request No. 107), and five specific sexual misconduct investigations (Request Nos. 113-117).

**1.     Relevancy**

The City asserts that the Department's internal affairs files are not relevant. The threshold requirement for discoverability under the Federal Rules of Civil Procedure is

---

[10] The City indicates that its investigation files are divided among two categories with respect to each of Defendant Arevalos' victims: (1) the Sex Crimes Investigation Files and (2) the Internal Affairs Investigation Files. (ECF No. 64 at 2:21-24.) The City has agreed to produce, subject to the Court's Protective Order, all of the Sex Crimes Investigation Files. (*Id.* at 2:25-27.) However, the City continues to object to the disclosure of its Internal Affairs Investigation Files. (*Id.* at 2:27-3:1.)

whether the information sought is "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1); *see also Hampton*, 147 F.R.D. at 229 ("In the absence of a privilege, the test for determining whether material is discoverable is relevancy.") (citing FED. R. CIV. P. 26(b)(1)). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)); *see also Darraj*, 2012 U.S. Dist. LEXIS 168968, at *3 ("Because discovery is designed to define and clarify the issues, it is not limited to only those specific issues raised in the pleadings.") (citing *Oppenheimer Fund*, 437 U.S. at 351); *Miller*, 141 F.R.D. at 296 ("To limit an examination to matters relevant to only the precise issue presented by their pleadings, would not only be contrary to the express purpose of Rule 26 . . . ., but also might result in a complete failure to afford plaintiff an adequate opportunity to obtain information that would be useful at the trial.") (quoting *Stevenson v. Melady*, 1 F.R.D. 329, 330 (C.D. N.Y. 1940)); *Spell*, 591 F. Supp. at 1114 ("It is clear that what is relevant in discovery is far different from what is relevant at trial, in that the concept at the discovery state is much broader.") (citing C. Wright, *Law of Federal Courts* 403 (1976)).

However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (quoting *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996)). The party resisting discovery bears the burden of demonstrating that the requested discovery is not relevant. *See Brady v. Grendene USA, Inc.*, 2012 U.S. Dist. LEXIS 173384, at *5 (S.D. Cal. Dec. 5, 2012) (citing *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010)).

12cv689-MMA (DHB)

Here, the Court finds that any internal affairs records concerning the specific incident involving Defendant Arevalos' assault of Plaintiff is highly relevant to Plaintiff's claims. *See Darraj*, 2012 U.S. Dist. LEXIS 168968, at *4 ("The internal documents concerning the incident from which this lawsuit arises are clearly relevant and within the scope of discovery.") and *10-11 ("To the extent that a police report, and internal affairs investigation arising from the incident at issue exists, it is highly relevant to the case and Plaintiffs are unable to obtain this information through alternative means."); *Soto*, 162 F.R.D. at 611 ("Plaintiff's request for the internal affairs documents concerning the investigation of the specific incident described in the complaint is relevant and is not overbroad."); *Spell*, 591 F. Supp. at 1115 ("Information from investigations into the incident which forms the basis for this lawsuit and into the background of the allegedly culpable individual is by definition highly relevant to this lawsuit.") (citing *Wood v. Breier*, 54 F.R.D. 7 (E.D. Wis. 1972)).

In addition, the Court finds that any internal affairs records concerning other instances of sexual misconduct perpetrated by Defendant Arevalos are relevant to Plaintiff's claims. As discussed in *Hampton* by former Magistrate Judge Louisa S Porter of this district:

> [P]ersonnel files and internal affairs histories of the . . . named officer defendants . . . are relevant to the allegations in this lawsuit. Information contained in these files may be relevant on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers. Further, information concerning other instances of misconduct may also be relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent.

147 F.R.D. at 229. Similarly, internal affairs records regarding any complaints of or investigations into incidents of sexual misconduct[11] by Defendant Arevalos are relevant to

---

[11] "Sexual misconduct" as used herein includes any improper conduct that is sexual in nature, and is not limited to incidents of criminal actions such as sexual harassment, sexual battery, sexual assault or sexual abuse. Based on the Court's prior *in camera* review of documents pertaining to Defendant Arevalos, the Court concludes that two internal affairs files ("IA Incident #2009-065" and "IA Incident #2009-040," encompassing Bates numbers 2117 through 2607) are not relevant in that they do not involve complaints of or investigations into incidents of sexual misconduct. (*See* ECF No. 72-1 at 10.) The remaining internal affairs files listed in the privilege are relevant and shall be produced. To the extent there are additional internal affairs files pertaining to Defendant Arevalos that are not listed in the City's privilege log, the parties are expected to meet and confer in good faith if a dispute arises about whether such files involve a complaint of or investigation into "sexual misconduct."

12cv689-MMA (DHB)

show Defendant Arevalos' propensity to engage in sexual misconduct and to show that his supervisors knew or should have known of his propensity to do so. Such records are relevant to show a repetitive pattern of misconduct by Defendant Arevalos and the failure of his supervisors to hold him accountable for such misconduct.

Indeed, documents of this type, "if they exist, may prove the sort of policy necessary to prevail against" the City on Plaintiff's *Monell* claim. *Miller*, 141 F.R.D. at 296 (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978)). In *Monell*, the Supreme Court held that a municipality can be sued for constitutional violations under 42 U.S.C. § 1983 if the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [then] the government as an entity is responsible under § 1983." 436 U.S. at 694. In order for Plaintiff to prove her *Monell* claim she must be entitled to seek discovery of prior incidents of sexual misconduct by Defendant Arevalos as well as what knowledge his supervisors had of the misconduct and when they knew it. The City's relevance objections ignore the theories underlying Plaintiff's claims. *See Spell*, 591 F. Supp. at 1117 ("[A] basic problem with defendants' objection on [relevancy] basis is that it disregards a major premise of plaintiff's case. Plaintiff alleges this exact process of internal review was grossly inadequate. . . . Accusations of failure to discipline and active encouragement of assaultive behavior abound in plaintiff's complaint. In order for plaintiff to prove these allegations, he must have an opportunity to discover and review internal investigative files and reports.") (citing *Dykes v. Morris*, 85 F.R.D. 373, 375-76 (N.D. Ill. 1980); *Dos Santos v. O'Neill*, 62 F.R.D. 448, 451 (E.D. Pa. 1974)).

Next, the Court finds that any internal affairs records concerning instances of sexual misconduct purportedly perpetrated by SDPD officers other than Defendant Arevalos is potentially relevant to Plaintiff's claims. Such records may be relevant to the City's policies of hiring, training, supervision, retention and control. Such records may also be relevant to the credibility of the individual Defendants and other witnesses. However, pursuant to Federal Rule of Civil Procedure 26(c)(1), the Court will not require the City to produce such

documents because it would impose an undue burden and expense on the City to search for and produce these documents. Indeed, Plaintiff's request (specifically, Request No. 107) would require the City to search every officer personnel file and every internal affairs files for the last twenty years. The Court believes imposing such a burden is inappropriate. Requiring an exhaustive search of twenty years of all of the Department's personnel and internal affairs records in the hopes that it will uncover additional relevant evidence is unduly burdensome. To the extent further discovery reveals additional complaints of or investigations into sexual misconduct by police officers, Plaintiff is entitled to seek the related internal affairs files. Further, to the extent there are internal affairs files relating to sexual misconduct that are responsive to Request Nos. 22 and 85-89, such files should be produced to Plaintiff. With respect to Plaintiff's request for complaints against non-party officers (Request Nos. 90-94), such records, if they exist, shall be submitted to the Court for *in camera* review to the extent they relate to sexual misconduct. Otherwise, they shall not be produced.

Finally, the Court finds that any internal affairs records that do not relate to complaints of or investigations into purported sexual misconduct by an on-duty SDPD officer, including Defendant Arevalos, are not relevant to this lawsuit and not likely to lead to the discovery of admissible evidence. Although the Court believes that internal affairs records regarding sexual misconduct complaints are (or might be) relevant, internal affairs records relating to other types of incidents (*i.e.*, excessive force) are not relevant. *See Evans v. City of San Diego*, 2012 U.S. Dist. LEXIS 47041, at *9 (S.D. Cal. Apr. 3, 2012) ("[O]ther internal affair investigations of unrelated incidents having nothing to do with the subject incident are not relevant and not likely to lead to the discovery of admissible evidence. Such documents need not be produced.").

### 2. **Overbreadth**

The City also asserts that Plaintiff's requests for its internal affairs records are overbroad as to time. The City cites to *Gill* to support its contention that any document production should be limited to the last five years. In *Gill*, the plaintiffs sought documents

going back ten years, but the court limited the request to five years. 2012 U.S. Dist. LEXIS 42159, at *8. The court found that the ten year time period requested by the plaintiffs was overbroad because the plaintiffs "offer[ed] no justification for such a length of time." *Id.*

In contrast, the Court believes that in the instant case Plaintiff has offered compelling justification to require production of internal affairs records relating to identifiable sexual misconduct allegations beginning at the time Defendant Arevalos was hired in 1993. (*See generally* ECF No. 56-2 and exhibits referenced therein.) However, as previously discussed, the City is not required to search the entirety of the Department's personnel files and internal affairs files to locate currently unidentified sexual misconduct files. Plaintiff is entitled to seek additional information through proper discovery methods to attempt to identify additional incidents going back to 1993 in which case such files would be discoverable.

### 3. **Privacy Rights**

The City also claims that production of its internal affairs records would infringe on the privacy rights of officers and members of the public. "Federal courts generally recognize a right of privacy that can be raised in response to discovery requests." *Stewart*, 2010 U.S. Dist. LEXIS 124581, at *6 (citing *Johnson ex rel Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992). "Resolution of a privacy objection or request for protective order requires a balancing of the need for the particular information against the privacy right asserted." *Id.* (citing *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal. 1990))

"With respect to the disclosure of police files, courts have recognized that privacy rights are not inconsequential." *Id.* (citing *Kelly*, 114 F.R.D. at 660). "However, these privacy rights have to be considered in light of the substantial weight afforded plaintiffs in civil rights cases against police departments." *Id.* at *6-7 (citing *Kelly*, 114 F.R.D. at 660). "Current case law suggests the privacy interests police officers have in their personnel file do not outweigh plaintiff's interests in civil rights cases." *Id.* at *7 (citing *Soto*, 162 F.R.D. at 617; *Hampton*, 147 F.R.D. at 230; *Miller*, 141 F.R.D. at 301); *see also Dowell*, 275 F.R.D. at 619 ("[T]he need for disclosure in civil rights cases is especially strong because 'public

confidence in our system of justice is of comparable significance and is threatened when relevant evidence is not made available and independent of that public perception of the system there are few things more important than doing justice in fact in individual cases.'") (quoting *Kelly*, 114 F.R.D. at 661); *Youngblood v. Gates*, 112 F.R.D. 342, 343 (C.D. Cal. 1985) (recognizing a "special import" that § 1983 actions "be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.") (citing *Wood*, 54 F.R.D. at 11). "In addition, Defendants' privacy concerns may be sufficiently protected with the use of a 'tightly drawn' protective order." *Id.* (citing *Chism v. Cnty. of San Bernardino*, 159 F.R.D. 531, 535 (C.D. Cal. 1994); *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301; *Kelly*, 114 F.R.D. at 662, 666, 671).

Here, the Court finds that any privacy interests can be sufficiently protected by the Protective Order that has been entered in this case. (*See* ECF No. 83.) Moreover, Plaintiff has no need for sensitive personal information contained within internal affairs files such as phone numbers, addresses, dates of birth, social security numbers or financial information. *See Dowell*, 275 F.R.D. at 620. In addition, "the name, arrest or detention record, or photograph of anyone not a party to this suit should be omitted or redacted." *Id.* Such information may be appropriately redacted by the City prior to production.

### 4.   **Work Product**

The City asserts an attorney work product objection to Request Nos. 114-117 to the extent these Requests seek the City's "litigation files." (ECF No. 56 at 16:20-21.) These requests seek documents related to any and all SDPD investigations, internal or otherwise, into the allegations of sexual misconduct perpetrated by SDPD officers and/or Defendant Arevalos, as set forth in the civil complaints against the City brought by (1) Emma M., (2) La Toshia Ann Thompson, (3) Clark Wong, or (4) Jane Roe. (ECF No. 56-5 at 13:10-14:7.)

"The work product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing FED. R. CIV. P. 26(b)(3)). "The rule protects work product which reveals the

mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Miller*, 141 F.R.D. at 303 (citing FED. R. CIV. P. 26(b)(3)). "However, work product materials may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship." *Id.* (citing FED. R. CIV. P. 26(b)(3)). "Documents prepared in the regular course of business do not fall under 'work product' and thus are not immune from discovery." *Id.* (citing *United States v. Exxon Corp.*, 87 F.R.D. 624, 638-39 (D.D.C. 1980)).

> [T]he work product doctrine rarely, if ever, would offer protection to the kinds of information in issue in this case. The work product doctrine does not apply to information collected or communications made in the normal course of business. It applies only to material generated primarily for use in litigation, material that would not have been generated but for the pendency or imminence of litigation.

*Kelly*, 114 F.R.D. at 659 (citing *Hickman*, 329 U.S. 495). "Since police departments are under an affirmative *duty*, in the normal course of serving their public function, to generate the kind of information at issue here, the policies that inspire the work product doctrine are wholly inapplicable." *Id.* (citing *Spell*, 591 F. Supp. at 1119-20)).

Documents constituting a police department's internal affairs investigations following citizen complaints have been found to constitute documents prepared in the regular course of business and, thus, not protected by the work product doctrine. *See Miller*, 141 F.R.D. at 303. Here, the City does not expressly discuss whether its internal affairs files are prepared in the regular course of business, as in *Miller*, or whether they are prepared in anticipation of litigation such that the work product doctrine might apply. However, the declaration of Assistant Chief Ramirez demonstrates that these files are not prepared in anticipation of litigation. Indeed, Assistant Chief Ramirez states that all information and documents obtained during internal investigations remain confidential, that an officer's testimony may not be used against him or her in subsequent criminal proceedings and that citizen complaints are confidential and obtained only for internal Department use. (*See* ECF No. 56-1 at 23:24-24:26.) Accordingly, the Court concludes that the City's internal affairs files are not subject to the work product doctrine.

The Court does not believe Plaintiff's Request Nos. 114-117 are aimed at the City's work product related to the various civil complaints, but rather to the underlying investigations into such complaints. To the extent the City is concerned with "litigation files" that were actually prepared in anticipation of litigation, the City may withhold such documents subject to providing Plaintiff with an adequate privilege log.

## C.    Personnel Files

The City objects to Plaintiff's request that the City produce the SDPD personnel files of Defendants Arevalos, Friedman, Tai and Hollister, and non-parties Sergeant Davis and Officers Perea, Dana, Broxterman, Zirpolo and Ninness. (*See* Request Nos. 66-75.) With respect to the non-parties, Plaintiff's counsel represented at the March 7, 2013 Discovery Conference that Plaintiff is targeting the personnel files of these individuals because Plaintiff's investigation thus far provides a good faith belief that these non-party officers have been subject to sexual misconduct accusations.

### 1.    Relevancy

The City asserts that information contained within its officers' personnel files is not relevant. However, with respect to the officers named as Defendants in this lawsuit, the Court disagrees, in part for the reasons discussed above in conjunction with the Court's analysis of the relevancy of internal affairs records. Moreover, "[i]tems typically found in personnel files, such as records concerning training and performance, have been held to be relevant on the issues of credibility, notice to the employer, ratification by the employer, motive of the officers and malicious intent." *Kassab v. San Diego Police Dep't*, 2008 U.S. Dist. LEXIS 72619, at *6-7 (S.D. Cal. Sept. 19, 2008) (citing *Soto*, 162 F.R.D. at 613). As stated in *Evans*:

> The San Diego Police Department is a self-governing agency. Accordingly, information contained in performance reviews and disciplinary records is not likely to be discoverable from any other source. In addition, the performance evaluations and personnel records are clearly relevant to Plaintiff's claims. . . because they relate to its policies of hiring, training, supervision and control.

2012 U.S. Dist. LEXIS 47041, at *7-8; *see also Stewart*, 2010 U.S. Dist. LEXIS 124581, at *5 ("The personnel records in question are relevant to Plaintiff's claims in the event the

officer in question violated standard practices and procedures.  Such documentation would be in the performance reviews and any related disciplinary action.  Also, such information is relevant to officer credibility.") (citing *Hampton*, 147 F.R.D. at 229); *Soto*, 162 F.R.D. at 614-15 (discussing relevancy of officer defendant personnel files).  "Production of these documents may also be vital to Defendants' claims because the performance evaluations are conducted on a routine basis and the absence of materials documenting officer misconduct would tend to suggest the officer in question performed adequately and in accord with department policies."  *Stewart*, 2010 U.S. Dist. LEXIS 124581, at *5.

Thus, the Court finds that the personnel files of the officers named as Defendants in this action are relevant or likely to lead to the discovery of admissible evidence.  Similarly, documents responsive to Request No. 106, which seeks documents pertaining to Defendant Friedman's "ticket fixing scandal," are relevant to Defendant Friedman's credibility and shall be produced.

However, the personnel records of the non-party officers may not be relevant to this action, despite Plaintiff's unsubstantiated claim that these officers have been the subject of sexual misconduct allegations.  The City shall lodge such records with the Court so that an *in camera* review of the documents can be performed.

With respect to Request Nos. 29-30 seeking internal communications by Defendants Tai or Hollister concerning Defendant Arevalos, the Court views such communications as relevant to this action.  It is likely that many of these communications, if they exist, would be found in Defendants' personnel files or in internal affairs files related to Defendant Arevalos.  This is the position taken by the City.  (*See* ECF No. 76 at 45:24-47:15.)  However, it is entirely plausible that some of these communications, especially e-mail communications, may not be contained in the official personnel or internal affairs files. The City has an obligation to search its databases, electronic or otherwise, to locate documents responsive to these two requests going back to 1993.  If such documents are located they shall be produced.

/ / /

Similarly, to the extent documents responsive to Request No. 32, which seeks studies regarding the demographic makeup of Defendant Arevalos' traffic stops, are not located in Defendant Arevalos' personnel or internal affairs files, such documents should be produced, to the extent they exist. The Court rejects the City's contention that these documents should be limited to the last five years. (*See id.* at 50:25-51:11.)

With respect to Request Nos. 35 and 95-103, the Court assumes that these records (*i.e.* officer awards and punishments) are to be found within the officers' personnel files. However, it is possible that responsive documents are kept elsewhere. In any event, these records should be produced (as to Request Nos. 35 and 95-97) or submitted for *in camera* review (as to Request Nos. 98-103), consistent with the Court's discussion of the relevancy of police officer personnel files.

### 2.   Overbreadth

The City also asserts that Plaintiff's requests for its officers' personnel files are overbroad as to time. Again, the City contends that any document production should be limited to a five year period of time. However, for the reasons previously discussed, the Court **OVERRULES** the City's objections on this ground. The City shall produce personnel files, consistent with this Order, going back to the date on which Defendant Arevalos was hired as a police officer in 1993.

### 3.   Privacy

The City also claims that production of its officers' personnel files would infringe on the privacy rights of the officers and members of the public. However, for the reasons previously discussed, the Court finds that any privacy interests can be sufficiently protected by the Protective Order that has been entered in this case. That being said, "the officer personnel files in their entirety are not discoverable." *Kassab*, 2008 U.S. Dist. LEXIS 72619, at *8. To the extent personnel records contain sensitive information such as medical histories, family information, addresses, phone numbers, social security numbers, financial information or other information that might expose these officers and their families to safety risks and/or fraud if disclosed, such information has no bearing on Plaintiff's sexual

12cv689-MMA (DHB)

misconduct allegations and can be easily redacted to protect Defendants' sensitive personal information.[12] *See id.*; *Darraj*, 2012 U.S. Dist. LEXIS 168968, at \*12; *Dowell*, 275 F.R.D. at 620. In addition, "the name, arrest or detention record, or photograph of anyone not a party to this suit should be omitted or redacted." *Dowell*, 275 F.R.D. at 620.

With respect to Defendants' performance evaluations, Plaintiff's need to obtain these documents outweighs Defendants' interest in maintaining their confidentiality. In *Darraj*, the court stated:

> This information may lead to valuable motive, intent, or impeachment evidence that Plaintiffs cannot obtain through alternative means. Defendants assert that confidentiality is required for performance evaluations because it engenders consistency and confidence in the Department's performance evaluation process, which enables critical and candid assessments that are vital to deputies, their superiors and the public. . . . The Court finds that disclosure of this information subject to a protective order will not harm this generally asserted governmental interest in confidentiality of performance evaluations.

2012 U.S. Dist. LEXIS 168968, at \*11-12 (citing *Kelly*, 114 F.R.D. at 662 ("[I]t is important to emphasize that in many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not comply to an individual litigant and/or her lawyer.")).

**D.     Psychological and Physical Health Records**

The City objects to Plaintiff's request for several types of medical records. Specifically, Plaintiff requests documents authored by Michael Mantell, former SDPD Chief Psychologist, regarding (1) Defendant Arevalos, or (2) the nature, extent, increase, frequency or reasons behind any misconduct complaints against SDPD personnel. (Request Nos. 39-40.) In addition, Plaintiff seeks mental health records of Defendants Arevalos, Friedman, Tai and Hollister, and non-parties Sergeant Davis and Officers Perea, Dana, Broxterman, Zirpolo and Ninness. (Request Nos. 20, 76-84.)

/ / /

---

[12] Any redaction of medical history information contained in Defendant Arevalos' personnel file must be consistent with the Court's discussion in Section II.D, *infra*. In other words, the City should redact medical information that does not relate to the incident at issue, prior episodes of sexual misconduct or Defendant Arevalos' propensity for sexual misconduct.

### 1.   Relevancy and Overbreadth

The City objects to the production of the above-listed medical documents on the basis of relevancy.  In *Soto*, the officer defendants similarly objected to the production of documents concerning their mental, psychological or physical conditions.  162 F.R.D. at 617-20.  The court found that records of mental or psychological conditions were relevant to the plaintiff's excessive force claims.  *Id.* at 618; *see also Miller*, 141 F.R.D. at 296 (finding officer's psychological evaluations relevant to plaintiff's *Monell* claim against a police department).  However, the court determined "that only those mental or psychological records which concern the incident at issue, prior episodes of violence, or the officers' propensity for violence of the type alleged in the complaint are relevant."  *Id.*

Here, the Court also finds the mental and psychological records of Defendant Arevalos to be relevant to Plaintiff's claims, including any records prepared by former Chief Psychologist Mantell.  However, the Court will follow the approach taken in *Soto* and find that only those mental or psychological records which concern the incident at issue (*i.e.*, Defendant Arevalos' assault of Plaintiff), prior episodes of sexual misconduct or Defendant Arevalos' propensity for misconduct of the type alleged in the Second Amended Complaint are relevant.

The Court finds that mental and psychological records of the other officers, including the other individual Defendants, are not relevant to Plaintiff's claims nor is their production likely to lead to the discovery of admissible evidence.  The Court notes that Plaintiff does not address the relevancy of these records in the Joint Motion.

### 2.   Privacy Rights

The City also objects to the disclosure of mental health records on the basis that disclosure would infringe on the officers' privacy rights.  "The Supreme Court has recognized a limited privacy interest in the confidentiality of one's medical records, derived implicitly from the United States Constitution."  *Soto*, 162 F.R.D. at 618 (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *Doe v. Attorney Gen. of U.S.*, 941 F.2d 780, 795-96 (9th Cir. 1991); *Caesar v. Mountanos*, 542 F.2d 1064, 1067 n.9 (9th Cir. 1976), *cert. denied*, 430

U.S. 954 (1977); *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 695-98 (E.D. Cal. 1993)). "However, this privacy interest in medical records is not absolute." *Id.* (citing *Pagano*, 145 F.R.D. at 696-97). "This right is conditional, and a limited impairment of the right may be allowed if properly justified." *Id.* at 618-19 (citing *In re Grand Jury Proceedings*, 867 F.2d 562, 565 (9th Cir. 1989) (per curiam)). "The state's interest must be balanced against the patient's right to maintain private medical records." *Id.* (citing *In re Grand Jury Proceedings*, 867 F.2d at 565; *Haw. Psychiatric Soc'y v. Ariyoshi*, 481 F. Supp. 1028, 1043 (D. Haw. 1979)).

Here, because Plaintiff cannot show the relevancy of the mental health records other than those of Defendant Arevalos, the Court believes that the privacy rights of those officers (other than Defendant Arevalos) must be protected. However, with respect to Defendant Arevalos, the Court believes that an *in camera* review of his medical records is appropriate "[d]ue to the highly sensitive nature of such documents." *Id.* at 619.

**E.     Policy Guidelines, Directives and Policy Statements**

The City objects to Plaintiff's request for Department policies and procedures, union contracts, employee misconduct regulations and internal rule changes. (Request Nos. 36-38 and 58-59.) The City claims that these requests are "extremely overbroad and unduly burdensome as to scope and time. Plaintiff seeks responsive documents for over 20 years (1990 to the present). [The City] has produced current copies of responsive documents and agrees that at most, the policies and procedures in effect at the time of the subject incident may be relevant." (ECF No. 56 at 16:2-5.) During the February 11, 2013 Discovery Conference, the City took the position that production of these documents should be limited to the last five years. (ECF No. 76 at 52:6-11.)

"The existence or non-existence of adequate guidelines for disciplining officers is relevant to Plaintiff's claims against the city under the [*Monell*] analysis, because such evidence may show a pattern or practice of such civil rights violations alleged in the complaint." *Soto*, 162 F.R.D. at 622 (citing *Monell*, 436 U.S. at 698). "In addition, [*Kelly*] encourages the disclosure of manuals, memoranda, guidelines, and other documents that

reflect the policies of the police department." *Id.* (citing *Kelly*, 114 F.R.D. at 666).

> A police department's interest in not permitting *the general public* to have access to such materials may be weighty. Legitimate law enforcement efforts could be frustrated, and the lives of officers could be endangered, if anyone who wanted to could learn details about how officers are trained to accomplish their missions in specific situations. The weight of law enforcement's interest drops dramatically, however, when a court imposes a tightly drawn protective order on the disclosure of such material, so that only counsel for plaintiff and perhaps his expert has access to it.

*Kelly*, 114 F.R.D. at 666. Thus, this Court concludes that police guidelines, policy statements, and other materials contained in these requests are relevant.[13]

However, Plaintiff's requests are overbroad, but not to the degree asserted by the City. Prior versions of policies, procedures, rule changes, regulations and union contracts going back to 1993 (when Defendant Arevalos was hired) are relevant to the issue of compliance with applicable policies and procedures during that time period. However, the City need not produce documents from before the time at which Defendant Arevalos was hired in 1993.

The City's objection that changes to Department policies and procedures constitute subsequent remedial measures (ECF No. 76 at 51:12-52:11) goes to the admissibility of such documents rather than their discoverability.

**F.     Miscellaneous Requests**

Plaintiff has not established the relevancy of communications between Javier Cota and Defendant Lansdowne. Thus, the City is not required to produce documents responsive to Request No. 108.

Communications between Defendant Arevalos and Plaintiff are clearly relevant and shall be produced in response to Request No. 109.

The City indicates that documents responsive to Request Nos. 113 and 115-117 will be produced subject to the Protective Order, as these documents are encompassed within the

---

[13] Plaintiff has conceded that Request No. 38 is not seeking internal documents setting forth the circumstances under which a civilian employee within the Department may be disciplined. (*See* ECF No. 76 at 54:1-55:7.) The Court agrees that such documents are not relevant. However, to the extent the documents discuss a civilian employee's responsibility to report misconduct of sworn officers, such material is relevant and shall be produced.

12cv689-MMA (DHB)

Sex Crimes Investigation Files. (*See* ECF No. 76 at 62:17-25.) In addition, to the extent there exists investigation documents related to the alleged sexual misconduct set forth in the civil complaint by Emma M., such documents shall also be produced in responsive to Request No. 114.

The Court does not believe that Plaintiff has established the relevancy of the documents sought by Request Nos. 124-126. Allegations of sexual misconduct by Captain Manny Guaderrama's son and any alleged preferential treatment that he received during his arrest for sexual battery and vandalism have no connection to sexual misconduct perpetrated by an officer. Similarly, Captain Guaderrama's personnel file has no relevance to Plaintiff's claims.

### III. CONCLUSION

In conclusion, the Court expresses concern with the City's refusal to produce documents in this case, many of which are clearly relevant and discoverable based on prior court rulings involving the City as a defendant. For example, in *Hampton*, Judge Porter criticized the admitted "custom and practice of the City Attorney's Office to review police files only after the court has issued an order." 147 F.R.D. at 229. Judge Porter indicated that "[t]his is a policy that the City Attorney's Office and the San Diego Police Department should reevaluate in light of this court's decision." *Id.* Based on the current dispute between the parties, it does not appear that the City has taken Judge Porter's advice to heart. Much of the instant dispute could have been resolved informally between the parties had the City done so. The Court therefore urges the City to reevaluate its policy of handling discovery requests so as to limit future instances of taking the time of the Court and the parties to resolve such issues.

Based on the above analysis, IT IS HEREBY ORDERED:

1.     On or before **April 26, 2013**, the City shall produce, consistent with this Order and subject to the Court's prior Protective Order, all documents responsive to Request Nos. 22, 29-32, 35-39, 58-59, 66-69, 85-89, 95-97, 106, 109 and 113-117.

2.   On or before **April 26, 2013**, the City shall lodge with the Court those documents identified herein as subject to the Court's *in camera* review in response to Request Nos. 20, 70-75, 90-94 and 98-103.

3.   The City is not required to produce documents responsive to Request Nos. 40, 76-84, 107-108 and 124-126.

**IT IS SO ORDERED.**

DATED:  March 29, 2013

DAVID H. BARTICK
United States Magistrate Judge