UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JANE DOE,

Plaintiff,

v.

THE CITY OF SAN DIEGO, et al.,

Defendants.

Civil No.    12-cv-0689-MMA (DHB)

**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING VARIOUS ISSUES**

**[ECF No. 115]**

On June 3, 2013, the parties filed a Joint Motion for Determination of Discovery Dispute Regarding Various Issues ("Joint Motion"). (ECF No. 115.) After a thorough review of the parties' arguments and evidence, the Court issues the following Order to resolve the issues in dispute.

## I. BACKGROUND

Plaintiff's allegations in this case are well-known to the Court and the parties. Therefore, they will not be summarized at length in this Order. Suffice it to say that Plaintiff seeks to recover compensatory and punitive damages from the City of San Diego, its police department and several current and former police officers based on a March 8, 2011 sexual assault committed by one of the former officers, Defendant Anthony Arevalos. In November 2011, Defendant Arevalos was convicted of multiple felony and misdemeanor counts arising out of on-duty sexual assaults of various female victims, including Plaintiff. Defendant

Arevalos was sentenced to more than eight years in state prison, and he is currently incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California. Defendant Arevalos has appealed his criminal convictions and the appeal remains pending before the California Court of Appeal.

## II. DISCUSSION

### A.  Further Deposition Testimony of Jane Doe and Brad T.

Defendants seek to re-open the depositions of Plaintiff and a percipient witness, Brad T., in order to ask questions "regarding the nature of any sexual relationship, the existence of any past or current sexual relationship between them, and the effect that the subject incident may have had on their sexual relationship." (ECF No. 115 at 2:17-19.) Defendant contends these topics are "highly relevant to Plaintiff's alleged emotional distress." (*Id.* at 2:23.)

#### 1.  Parties' Arguments

Defendants assert several arguments in support of their request to re-open the depositions of Plaintiff and Brad T. First, Defendants contend good cause exists to permit the depositions of Plaintiff and Brad T. to exceed the seven hour limit imposed by Rule 30(d)(1) "because defense counsel was prevented from thoroughly examining these witnesses by Plaintiff's counsel" (*id.* at 3:13-15), and that "Plaintiff's counsel incessantly coached, lectured and intimidated the witnesses." (*Id.* at 3:22-23.) Second, Defendants contend they should be permitted to inquire into Plaintiff's sexual history and current romantic relationship(s) given that Plaintiff is seeking to recover emotional distress damages. (*Id.* at 5:1-11.) Defendants maintain that Rule 412 of the Federal Rules of Evidence "permits discovery regarding an alleged sexual assault victim's past sexual history or predisposition in cases involving sexual offenses if certain conditions are met, including relevancy and a showing that the information cannot be obtained except through discovery." (*Id.* at 5:14-17.) Third, Defendants assert they are not seeking to discover evidence of Plaintiff's sexual history for purposes generally prohibited by Rule 412 (*i.e.*, to prove Plaintiff engaged in other sexual behavior or to prove her sexual predisposition); rather, Defendants seek this

evidence to "test Plaintiff's credibility or to prove the extent of her damages." (*Id.* at 5:18-6:1.) Fourth, Defendants claim that because Plaintiff has placed her mental and emotional state at issue in this case, they are entitled to inquire whether the sexual assault by Defendant Arevalos "impacted her ability to trust people and to be intimate and interact socially" and whether any prior traumatic sexual assault exists that would contribute towards her current mental and emotional state. (*Id.* at 6:3-22.)

Plaintiff opposes Defendants request to re-open the depositions of Plaintiff and Brad T. in order to inquire into Plaintiff's sexual history. First, Plaintiff contends that she has already answered invasive questioning regarding the sexual assault and her emotional distress damages allegation, including that she suffers from post-traumatic stress disorder and major depressive disorder. (*Id.* at 9:27-5.) Second, Plaintiff argues Defendant has failed to adequately meet and confer prior to moving to compel the additional depositions. (*Id.* at 10:12-21.) Third, Plaintiff claims Defendants are seeking to degrade, humiliate and intimidate her, her friends and her family.[1] (*Id.* at 10:22-25.) Fourth, Plaintiff argues Rule 412 "stands as a shield against the expansion of the single-session seven-hour time limit for the type of sexually intrusive questioning sought by the defendants." (*Id.* at 11:22-24.) Specifically, Plaintiff argues the policies underlying Rule 412 must be considered in determining whether to allow any discovery into her sexual history and behavior, and that Defendants have "not sufficiently articulated what relevant and admissible evidence might be garnered from second depositions sessions that would ***substantially outweigh*** the dangers of harm to the victim, or justify the privacy intrusion upon a possible current and/or past lover. Nor has the CITY established that it cannot obtain this evidence through other less intrusive, less burdensome, and less humiliating means – as for instance, written interrogato-

---

[1] The Court does not view defense counsel's efforts to inquiry into Plaintiff's sexual practices to be made in bad faith. Nor is defense counsel attempting to engage in improper voyeurism or a "prurient romp" through Plaintiff's sexual behavior. (ECF No. 115 at 13:23-14:11 *see also* ECF No. 115-3 at 13:4-7 (accusing defense counsel of engaging in "medieval" and "dark ages" deposition questioning.) Accordingly, the Court finds Plaintiff's counsel's continual personal attacks on defense counsel to be excessive and improper. The Court cautions all counsel to keep in mind the high standards of professionalism that is expected for practitioners in this Court. *See* Local Civil Rule 83.4.

ries." (*Id.* at 11:25-13:16.)

### 2. Applicable Rules

Litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Federal Rule of Civil Procedure 26 permits a court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; . . . (C) prescribing a discovery method other than one selected by the party seeking discovery; [and] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(A), (C) and (D).

Federal Rule of Evidence 412 provides that "[t]he following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." FED. R. EVID. 412(a). However, Rule 412 contains express exceptions to this exclusionary rule, including: "In a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. The court may admit evidence of a victim's reputation only if the

victim has placed it in controversy." " FED. R. EVID. 412(b)(2).

The advisory committee notes to the 1994 amendments to Rule 412 provide insight into the purpose of the Rule and its applicability to discovery:

> [Rule 412] aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.
>
> Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim.
>
> . . .
>
> Past sexual activities connotes all activities that involve actual physical conduct, i.e. sexual intercourse or sexual contact. [Citations.]
>
> . . .
>
> [Rule 412] also exclude[s] all other evidence relating to an alleged victim of sexual misconduct that is offered to prove a sexual predisposition. This amendment is designed to exclude evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder. Admission of such evidence would contravene Rule 412's objectives of shielding the alleged victim from potential embarrassment and safeguarding the victim against stereotypical thinking. Consequently, unless the (b)(2) exception is satisfied, evidence such as that relating to the alleged victim's mode of dress, speech, or life-style will not be admissible.
>
> . . .
>
> The reason for extending Rule 412 to civil cases is equally obvious. The need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief. There is a strong social policy in not only punishing those who engage in sexual misconduct, but in also providing relief to the victim. Thus, Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as actions for sexual battery or sexual harassment.

FED. R. EVID. 412 advisory committee's notes.

Although Rule 412 governs the *admissibility* of sexual behavior evidence rather than its *discoverability*, the policies underlying the Rule must be considered. *See Barsamian v.*

*City of Kingsburg*, No. 1:07-cv-00316 OWW GSA, 2008 U.S. Dist. LEXIS 44777, at *12-13 (E.D. Cal. May 22, 2008) (quoting *Blackmon v. Buckner*, 932 F. Supp. 1126, 1127-28 (S.D. Ind. 1996)) ("To avoid undermining Rule 412, the court must 'consider precisely the potential relevance of such evidence and . . . prevent its use for purposes of exploiting stereotypes or subjecting a party or witness to gratuitous embarrassment and invasion of privacy.'"); *Herron v. Eastern Indus., Inc.*, No. 5:07cv35/RH/EMT, 2007 U.S. Dist. LEXIS 69339, at *7-8 (N.D. Fl. Sept. 19, 2007) (citing numerous cases to support the conclusion "that the majority of district courts that have addressed whether Rule 412 is applicable to discovery have held that it is relevant in the resolution of a discovery dispute.") ("The relevance standard in Rule 26 is the governing standard for discovery, but the court must determine whether the information sought should be subject to discovery in light of the policy underlying Rule 412 that protects victims of sexual misconduct from undue embarrassment and intrusion into their private affairs."); *Gibbons v. Food Lion, Inc.*, No. 98-1197-Civ-T-23F, 1999 U.S. Dist. LEXIS 23576, at *6 (M.D. Fl. Feb. 19, 1998) ("[W]hile relevance rather than admissibility is the governing standard for discovery, the Court must determine whether the information requested should be ordered disclosed in light of 'the policy underlying Rule 412 that protects victims of sexual misconduct from undue embarrassment and intrusion into their private affairs.'") (quoting *Sanchez v. Zabihi*, 166 F.R.D. 500, 502 (D. N.M. 1996)); *Miller v. Sweetheart Cup Co., Inc.*, No. 1:96:cv111, 1997 U.S. Dist. LEXIS 24298, at *6 (N.D. Ga. Oct. 15, 1997) ("The standard is still that articulated in Rule 26 -- that is, whether the matter is reasonably calculated to lead to the discovery of admissible evidence. Thus, whether [the information sought] contain[s] material protected by Rule 412 is not determinative of the issue of discovery."); *Giron v. Corrections Corp. of Am.*, 981 F. Supp. 1406, 1407 (D. N.M. 1997) ("Although Rule 412 controls the admissibility of evidence rather than its discoverability, it must inform the proper scope of discovery in this case.") (citing *Barta v. City and Cnty. of Honolulu*, 169 F.R.D. 132 (D. Hawaii 1996)); *Barta*, 169 F.R.D. at 135 ("Although Rule 412 is a rule controlling the admissibility of evidence rather than its discoverability, Rule 412 must inform

the proper scope of discovery.").

3. <u>Analysis</u>

As noted above, Defendants claim the additional information they seek from Plaintiff and Brad T. is relevant to "test Plaintiff's credibility or prove the extent of her damages." (ECF No. 115 at 6:1.) However, with respect to credibility, the Court is not persuaded Defendants have met their burden of demonstrating that the probative value of the information they seek substantially outweighs the harm Plaintiff would experience if her sexual behavior were to be discussed in a deposition setting. *See J.W. v. City of Oxnard*, No. CV 07-6191-CAS (SHx), 2008 U.S. Dist. LEXIS 91366, at *8 (C.D. Cal. Oct. 27, 2008) ("The probative value of her sexual behavior to help determine whether plaintiff is credible does not substantially outweigh the danger of harm to plaintiff. Plaintiff's credibility can be addressed in other ways, such as through her inconsistent statements regarding the incident itself."); *Macklin*, 257 F.R.D. at 605 (concluding that "Defendants' arguments as to the need to explore Plaintiff's past sexual conduct for purposes of impeachment is unpersuasive. . . . [T]o the extent Defendants attempt to use this avenue of questioning to discover evidence for impeachment that they do not currently have, the effort suggests something in the nature of a fishing expedition.").

However, with respect to damages, the Court is persuaded that inquiry into Plaintiff's sexual history and behavior is reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has alleged that the sexual assault perpetrated by Defendant Arevalos has caused her to suffer emotional distress, among other things. (*See, e.g.*, Third Amended Complaint, ECF No. 95 at ¶ 49 (alleging Plaintiff "suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage").) The nature and extent of Plaintiff's emotional distress, and the manner in which it is manifested, is therefore relevant to the parties' claims and defenses. Thus, to the extent Plaintiff's sexual behavior, relationships, etc. have been impacted as a result of the subject sexual assault, that information is relevant to her claims. *See Doe v. Willets Unified School Dist.*, No. C-09-03655-JSW (DMR), 2010 U.S. Dist. LEXIS 68547, at *5-6 (N.D. Cal. June

23, 2010) ("[A]nother guiding principle here is that defendants have a right to conduct discovery to understand plaintiff's claims and to prepare their defense. Plaintiff cannot use [Rule] 412 as both a shield and a sword. If plaintiff intends to make affirmative use of evidence regarding her sexual conduct, then defendants should be given an opportunity to test that information through discovery. Stated another way, plaintiff cannot use at trial any evidence that she does not allow defendants to discover.").

However, given the exclusionary nature and underlying policies of Rule 412, the question becomes whether the discovery should be precluded under Rule 26, notwithstanding its relevance. *See Macklin v. Mendenhall*, 257 F.R.D. 596, 604 (E.D. Cal. 2009) ("Given the sensitive and potentially embarrassing nature of the information sought from Plaintiff, the fact that she is alleged to be a victim in a civil action involving sexual harassment, and the policies voiced in the Advisory Comments to Fed. R. Evid. 412, the Court concludes that the fact that the information sought by Defendants from Plaintiff might be discoverable under Fed. R. Civ. Proc. 26(b) does not limit or absolve the Court of its responsibility to consider and fashion appropriate protective orders under Fed. R. Civ. Proc. 26(c).").

Upon careful consideration of the policies underlying Rule 412 and the facts of this case, the Court finds that additional deposition testimony of Plaintiff and Brad T. is not warranted. Such testimony on the topics proposed by Defendants would be unduly intrusive and embarrassing. Moreover, as Plaintiff recognizes, the information can be sought through less intrusive means such as written interrogatories. (ECF No. 115 at 13:13-16.) Additional sources from which the information could be sought include Dr. Clark R. Clipson, Ph.D., and Plaintiff's therapist, Dr. Kay Defrancesca.

Accordingly, Defendants' request that the depositions of Plaintiff and Brad T. be re-opened is **DENIED**.

**B.     Deposition of Gerald Sanders**

Plaintiff seeks to compel the deposition of Gerald Sanders, the former police chief and mayor of the City of San Diego. On April 9, 2013, Plaintiff served Mr. Sanders with a Rule 45 deposition subpoena requiring his attendance at a videotaped deposition noticed for May

29, 2013.  (ECF No. 115 at 14:16-19; ECF No. 115-6 at 2.)  Plaintiff contends Mr. Sanders is a "potentially significant witness" (ECF No. 115 at 15:5) and that she "is entitled to question Mr. Sanders regarding his knowledge of the [City's] hiring, supervising, reporting and documentation policies and procedures" and "about his knowledge of any instances of sexual misconduct during his tenure as Chief of Police and Mayor of the City of San Diego." (*Id.* at 16:26-17:3.)  In fact, Plaintiff recently filed a motion for leave to amend her complaint to add two new defendants, including Mr. Sanders.  (ECF No. 121.)  The district judge took that motion under submission on July 24, 2013.  (ECF No. 129.)

Defendants seek a protective order preventing the deposition of Mr. Sanders on grounds that the deposition would be "harassing and unduly burdensome because, at least in his capacity as former Mayor and Chief of Police, Mr. Sanders is unlikely to contribute anything relevant to this case."  (*Id.* at 7:6-8.)  Defendants further contend "there is no evidence linking [Mr. Sanders] to any of the alleged misconduct involving Mr. Arevalos." (*Id.* at 7:10-11.)  Defendants finally contend that in light of Plaintiff's pending motion to amend the complaint to add Mr. Sanders as a named defendant, his "deposition is premature. As a potential defendant, Mr. Sanders is entitled to answer the allegations asserted against him and prepare for his deposition as a party, not a (potentially) percipient witness." (*Id.* at 7:18-21.)

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).  The deponent's attendance may be compelled by subpoena under Rule 45."  FED. R. CIV. P. 30(a)(1).  However, the Court is authorized to issue a protective order, upon a showing of good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1).  Such a protective order may include, among other limitations expressed in Rule 26(c)(1), an order "forbidding the disclosure or discovery [or] specifying the terms, including time and place, for the disclosure or discovery."  FED. R. CIV. P. 26(c)(1)(A)-(B).

Here, the Court rejects Defendants' argument that "Mr. Sanders is unlikely to contribute anything relevant to this case."  (ECF No. 115 at 7:8.)  Based on the evidence

provided by Plaintiff in support of the instant joint motion and in support of her pending motion for leave to amend the complaint, the Court is satisfied that Mr. Sanders' testimony is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Indeed, to the extent Mr. Sanders became aware of sexual misconduct by Defendant Arevalos or other police officers while Mr. Sanders served as police chief and/or mayor, Plaintiff should be permitted discovery into this knowledge and any actions taken in response to such misconduct. Moreover, to the extent Mr. Sanders was never made aware of Defendant Arevalos' misconduct, Plaintiff should be entitled to such testimony. Either way, Mr. Sanders' deposition is proper.

That being said, given that Mr. Sanders' status as either a percipient witness or a named defendant awaits the district judge's ruling on Plaintiff's motion for leave to amend, the Court is persuaded that a protective order postponing Mr. Sanders' deposition is appropriate. Mr. Sanders is entitled to answer questions during his deposition when he knows whether he is a defendant in this case.

Accordingly, the Court issues a protective order preventing the deposition of Mr. Sanders from going forward until after the district judge rules on the motion to amend. The parties are **ORDERED** to meet and confer in good faith following the district judge's ruling to schedule the deposition.

## C. Expert Designation of Lori Adams

Defendants contend "Plaintiff has improperly designated current San Diego Police Detective Lori Adams as a non-retained expert." (ECF No. 115 at 7:24-25.) Defendants argue: (1) because Detective Adams is a current employee of the City of San Diego, any expert testimony she provides creates an inherent conflict of interest; (2) Detective Adams did not consent to being an expert witness for Plaintiff; and (3) Plaintiff failed to include a reasonable summary of Detective Adams' testimony or the normal rates she charges for deposition and trial testimony, in violation of this Court's Scheduling Order. (*Id.* at 8:1-7.) Defendants request that the Court "strike Plaintiff's designation of Detective Lori Adams and preclude Plaintiff's from attempting to solicit expert testimony from her during her

deposition and at the time of trial." (*Id.* at 8:8-10.) Plaintiff objects to Defendants' arguments on the basis that Defendants failed to adequately meet and confer and that Defendants' "request is baseless and should be summarily denied." (*Id.* at 18:4-7.)

Rule 26 requires the parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the party's disclosure of the witness must be accompanied by the witness' written report. FED. R. CIV. P. 26(a)(2)(B). Thus, Rule 26 draws a distinction between retained experts and non-retained experts. *See Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) ("In order to give the phrase 'retained or specially employed' any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony.") ("[W]here . . . the expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert."); *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007) (characterizing non-retained expert witness as "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven."). Only the former is required to provide a written expert report under Rule 26. However, as to the latter, the disclosure must include "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C)(i)-(ii). Expert disclosures must be made "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D).

"Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "Rule 37(c)(1) is a 'self-executing,'

'automatic' sanction designed to provide a strong inducement for disclosure." *Id.* (quoting FED. R. CIV. P. 37 advisory committee's note (1993)). Moreover, because of the automatic nature of this sanction, courts are not required to make a finding of willfulness or bad faith prior to excluding expert testimony at trial. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008). "When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless." *Goodman*, 644 F.3d at 826 (citing FED. R. CIV. P. 37(c)(1); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212-13 (9th Cir. 2008)). "The burden to prove harmlessness is on the party seeking to avoid Rule 37's exclusionary sanction." *Id.* at 827 (citing *Yeti by Molly*, 259 F.3d at 1107).

"[P]articularly wide latitude [is given] to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106 (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)). Despite the severity of this exclusionary sanction, it may be appropriate "even when a litigant's entire cause of action or defense has been precluded." *Id.* (citing *Ortiz-Lopez*, 248 F.3d at 35).

The Ninth Circuit has established a five-factor test for determining whether sanctions are appropriate in these circumstances: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; [and] 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

Here, Plaintiff designated Detective Adams as a non-retained expert. (*See* ECF No. 115-7 at 3:18.) The Court rejects Defendants' initial argument that Plaintiff's designation of Detective Adams is improper because it creates an inherent conflict of interest in light of her current employment status with the City. Not only is Detective Adams a percipient witness to the facts underlying Plaintiff's claims, but, according to Plaintiff, Detective Adams' 2011 sex crimes report contains her opinions regarding Defendant Arevalos' sexual misconduct. Plaintiff contends that in light of the expert opinions contained in Detective

Adams' report, Plaintiff was required to list Detective Adams as a non-retained expert whom Plaintiff intends to call as a witness to introduce expert evidence. The Court agrees. It matters not that Detective Adams is an employee of the City of San Diego. If, during her investigation of Defendant Arevalos' sexual misconduct, she formed expert opinions based on her "knowledge, skill, experience, training, or education," FED. R. EVID. 702, Plaintiff is entitled to seek to introduce those opinions at trial.[2] But in order to do so, Plaintiff must first comply with Rule 26's expert disclosure requirements.

Similarly, the fact that Detective Adams has not consented to be an expert for the Plaintiff does not justify Defendants' request that the Court strike Plaintiff's designation or preclude Plaintiff from attempting to solicit expert testimony from Detective Adams during her deposition or at trial. Plaintiff has not sought to designate Detective Adams as a retained expert.[3] Rather, she is designated as a non-retained expert based on her role as a percipient witness to certain facts of this case and the opinions she formed during her investigation into police misconduct. *See Britz Fertilizers, Inc. v. Bayer Corp.*, No. 1:06cv287 OWW DLB, 2009 U.S. Dist. LEXIS 57947, at *7-8 (E.D. Cal. June 17, 2009) ("[P]ercipient witness testimony is based on the first hand experience of the witness, i.e., the observations of the witness and the process by which decisions were made. The risk of surprise is not as great [as with retained expert witnesses] because the parameters of the witness's opinion, as it relates to actions he or she took in the past, are generally already known to the parties."). In this respect she appears more closely analogous to the prototypical non-retained expert witness, the treating physician, who does not generally consent to being listed as a non-retained expert.

Finally, although Plaintiff was not required to provide a written expert report from Detective Adams because she is not a retained expert, Plaintiff's expert disclosure was

---

[2] The Court takes no position regarding whether Detective Adams qualifies as an expert or whether her testimony will be admissible at trial. Such issues are more appropriately addressed to the district judge as this case nears trial.

[3] Defendants' argument regarding an inherent conflict would have been appropriate had Plaintiff sought to retain Detective Adams to provide expert testimony.

required to provide "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C)(i)-(ii). However, Plaintiff failed to do so. Instead, Plaintiff only listed Detective Adams' contact information and stated that she is "[n]ot retained as a testifying expert." (ECF No. 115-7 at 3:18.) Thus, Plaintiff has not fully complied with the expert disclosure requirements of Rule 26.

The question now becomes whether Plaintiff's non-compliance was substantially justified or harmless, and whether sanctions are appropriate. As to the first prong, the Court finds Plaintiff has not established substantial justification for her failure to identify the subject matter on which Detective Adams is expected to testify or provide a summary of the facts and opinions to which the witness is expected to testify. Indeed, Plaintiff makes no effort to explain her failure.

However, as to the second prong, the Court finds Plaintiff's failure can be easily remedied and that there is no harm to Defendants. Indeed, Defendants are well aware of Detective Adams' role in this case and the opinions she set forth in her 2011 sex crimes report. In fact, Plaintiff obtained the report from Defendants during discovery. Moreover, discovery is still open. The parties have until September 1, 2013 to complete discovery. In addition, Defendants (other than Defendant Arevalos) are in the unique position of having unfettered access to Detective Adams. Defendants' ability to prepare for a defense is therefore not affected by Plaintiff's technical failure. Neither is the Court's schedule. Accordingly, the Court declines to sanction Plaintiff. Nonetheless, deficiencies remain in Plaintiff's expert designation. Accordingly, on or before **August 9, 2013**, Plaintiff shall serve Defendants with an amended expert designation that includes the information required by Rule 26(a)(2)(C).[4]

---

[4] Defendants also contend that Plaintiff's expert designation violates the Court's Scheduling Order because it does not include the normal rates Detective Adams charges for deposition and trial testimony. However, in light of the circumstances of this case, the Court excuses Plaintiff from this requirement. If the City of San Diego desires this

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1.     Defendants' request that the depositions of Plaintiff and Brad T. be re-opened is **DENIED**.

2.     The deposition of Gerald Sanders shall not go forward until after the district judge issues a ruling on Plaintiff's pending motion to amend the complaint. Following that ruling, the parties shall meet and confer in good faith to schedule Mr. Sanders' deposition.

3.     Defendants' request that the Court sanction Plaintiff by striking her expert designation of Detective Lori Adams is **DENIED**.

4.     On or before **August 9, 2013**, Plaintiff shall serve Defendants with an amended expert designation that includes the information required by Federal Rule of Civil Procedure 26(a)(2)(C).

**IT IS SO ORDERED.**

DATED:  August 1, 2013

DAVID H. BARTICK
United States Magistrate Judge

---

information, its attorneys can ask Detective Adams directly.