UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JANE DOE, | | Civil No.    12-cv-0689-MMA (DHB) |
| | Plaintiff, | |
| v. | | **DISCOVERY ORDER** |
| THE CITY OF SAN DIEGO, et al., | | **[ECF Nos. 174, 180, 186]** |
| | Defendants. | |

The following discovery matters are currently pending before the Court: (1) whether Defendant City of San Diego should be required to produce to Plaintiff Jane Doe any of the documents submitted to the Court for *in camera* review pursuant to the Court's October 25, 2013 Order (ECF No. 162); (2) Plaintiff's request for oral argument concerning her document request numbers 177 and 186 (ECF Nos. 174, 190); (3) the parties' joint motion for determination of discovery dispute concerning the deposition of San Diego Police Department ("SDPD") Detective Stacee Botsford (ECF Nos. 180, 186); and (4) the parties' dispute concerning the number of Plaintiff's remaining depositions (ECF Nos. 173, 177). Having reviewed the parties' various briefs, the documents submitted by the City for *in camera* review, and the relevant law, the Court issues this Order to resolve these remaining discovery issues.

/ / /

/ / /

1. **Document Production Following _In Camera_ Review**

In response to the Court's October 25, 2013 Order, the City lodged documents identified by the following Bates numbers:

    (a)    BLACKFORD00001 through BLACKFORD01726;

    (b)    12-175.IA001 through 12-175.IA420;

    (c)    12-176.IA001 through 12-176.IA1172;

    (d)    TAITANO001 through TAITANO334;

    (e)    SINCLAIR001 through SINCLAIR247;

    (f)    BORGES001 through BORGES157;

    (g)    0001 through 00646 (contained in a redwell folder); and

    (g)    TAI-424.

In addition, the City lodged nine compact discs. Three of the discs contain files pertaining to the Blackford investigation, while the remaining six discs contain files relating to a March 2013 firearm incident in Escondido, California that is more fully discussed below.

    a.    **Blackford Investigation Documents**

The majority of the documents lodged by the City relate to the City's investigation into a December 2012 DUI crash involving SDPD Detective Jeffrey Blackford and subsequent efforts by other SDPD employees to cover up Detective Blackford's criminal conduct.[1] As the Court recognized in its October 25, 2013 Order, documents pertaining to this incident and investigation are relevant to Plaintiff's claim that a policy or custom exists within the SDPD by which officers are encouraged to engage in illegal conduct without risk of punishment because their fellow officers will help cover up the misconduct, thereby protecting the offending officers from punishment or criminal exposure. (_See_ ECF No. 162 at 6:11-7:1.) However, the Court ordered an _in camera_ review of the responsive documents in light of the potential that the City's internal investigation remained ongoing. The Court's

---

[1] Specifically, the documents labeled with the prefixes "BLACKFORD," "12-175.IA," and "12-176.IA" pertain to the Blackford investigation.

concern over an ongoing investigation has been quelled upon its review of the Blackford investigation files, which indicate that the City's internal investigation has been completed. Accordingly, the Court finds it appropriate for the City to produce the following documents:

(a)   BLACKFORD001 through BLACKFORD00413;

(b)   BLACKFORD00415 through BLACKFORD00707;

(c)   BLACKFORD00713 through BLACKFORD00932;

(d)   BLACKFORD00940 through BLACKFORD00962;

(e)   BLACKFORD01007;

(f)   BLACKFORD01012 through BLACKFORD01054;

(g)   BLACKFORD01077 through BLACKFORD01114;

(h)   BLACKFORD01133 through BLACKFORD01436;

(i)   BLACKFORD01520 through BLACKFORD01623;

(j)   BLACKFORD01696 through BLACKFORD01714;

(k)   BLACKFORD01725 through BLACKFORD01726; and

(l)   12-176.IA777 through 12-176.IA782.

The Court refrains from ordering production of the Blackford investigation files in their entirety because many of the documents contain unnecessary gang unit officer schedules and contact information, accident scene photographs and aerial maps, and other supporting investigatory documents that the Court finds inappropriate for production. Moreover, many of the "BLACKFORD" documents, and all but six pages of the "12-175.IA" and "12-175.IA" documents are duplicative of documents the Court is ordering the City to produce.  Additionally, the Court finds that the information contained on the three compact discs pertaining to the Blackford investigation shall not be produced.  The information is either duplicative of documents contained in the hard copy files or irrelevant to Plaintiff's claims.

**b.   Taitano, Sinclar and Borges Documents**

The Court has reviewed the personnel files of William Taitano, Omar Sinclar, and Anthony Borges, each of which contain evidence that these police officers engaged in

misconduct that was sexual in nature.  However, upon review of the documents, the Court believes that the relevancy of the information is outweighed by the need to protect the privacy of non-parties.  Importantly, none of these files contain any evidence suggesting that the incidents of misconduct were not properly investigated or that the misconduct was condoned by the police department in any way.  To the contrary, the documents demonstrate the SDPD properly responded to reports of misconduct and that the City's polices relating to discipline and/or termination were properly enforced.  Moreover, there is no evidence that any of the offending officers engaged in the misconduct due to an actual or perceived culture within the SDPD that encouraged officers to violate the law or the constitutional rights of others under the belief their actions would remain immune from punishment.  For these reasons, the Court will not order the City to produce the documents labeled TAITANO001 through TAITANO334, SINCLAIR001 through SINCLAIR247, or BORGES001 through BORGES157.

The Court also takes this opportunity to clarify its May 28, 2013 Order Following *In Camera* Review of Documents.  (ECF No. 111.)  In that order, the Court ordered that the City not disclose any portion of the files of Officers Art Perea, Daniel Dana, Thomas Broxterman, James Zirpolo, and Gib Ninness.  (*Id.* at 2:23-24.)  To the extent any of those files contained evidence of officers' sexual misconduct,[2] production was not ordered based on the same reasoning set forth in the preceding paragraph.  As discussed more fully below, the Court rejects the City's current position that the Court previously determined that the Daniel Dana incident is completely irrelevant to this case.  (*See* ECF No. 180 at 10:1-7.)  However, consistent with the reasoning set forth above, the Court found that any relevance of the evidence was outweighed by other concerns.

### c.   Redwell Folder

The City lodged various documents marked with Bates numbers 0001 through 00646.  These documents were placed in a redwell folder and they contain documents relating to the

---

[2] Only the files of Officers Perea and Dana contained evidence of sexual misconduct.

following: (1) the SDPD's internal investigation into a March 2013 incident involving three off-duty SDPD officers involving the discharge of a firearm near a shopping mall in Escondido, California (Bates numbers 0001 through 0377); (2) internal City correspondence prepared in response to the Court's October 25, 2013 Order, and which are protected attorney-client communications (Bates numbers 00378 through 00379); (3) files pertaining to former SDPD officer Russell Napier (Bates numbers 00380 through 00397); and (4) documents pertaining to the internal investigation of the Blackford incident (Bates numbers 00398 through 00646). For the reasons stated below, the City is not required to produce any of these documents.

First, the documents pertaining to the firearm discharge in Escondido shall not be produced. Not only is this incident unrelated to any allegation of sexual misconduct, but the evidence fails to demonstrate any improper conduct or cover-up by SDPD's investigating officers.[3]

Second, for the same reasons discussed above in connection with the documents pertaining to Officers Taitano, Sinclair, and Borges, the Court orders that the City not produce the documents pertaining to Officer Napier. The Court's decision in this regard is further supported by the remoteness of the incident involving Officer Napier, which occurred in 1989, prior to Defendant Arevalos' employment with the SDPD.

Finally, the documents pertaining to the Blackford investigation shall not be produced because they are duplicative of documents that the Court is ordering the City to produce to Plaintiff.

### d.   Standardized Purge Forms

The Court's October 25, 2013 Order required lodgment of the Standardized Purge Form of Defendant Rudy Tai to enable to the Court to better assess the parties' dispute concerning Plaintiff's request number 188. (ECF No. 162 at 7:7-23.) Upon review of Defendant Tai's Standardized Purge Form, the Court finds it appropriate to order the City

---

[3] The City also lodged six compact discs concerning this incident. The City is not required to produce these discs to Plaintiff.

to supplement its production in response to Plaintiff's request number 188.  Specifically, the City shall produce the Standardized Purge Form for each SDPD personnel who is either a Defendant in this case or whose personnel files were produced to the Court for *in camera* review.  The City's objections to this request are overruled.

**2.    Plaintiff's Request for Oral Argument**

On November 8, 2013, Plaintiff filed a redacted version of her request for oral argument on the parties' prior joint motion for determination of discovery dispute concerning Plaintiff's third set of requests for production of documents.  (ECF No. 174.)  On November 14, 2013, the Court granted Plaintiff's motion for leave to file under seal an unredacted version of the motion for oral argument.  (ECF Nos. 189, 190.)

In her motion for oral argument, Plaintiff contends that recent testimony of Lt. Timothy Saelens, obtained at his October 21, 2013 deposition, requires that "Plaintiff must have the opportunity to present her arguments concerning the relevance of the [Blackford] documents withheld (such as the officer interviews and transcripts thereof, and the results of the criminal investigation thus far withheld from Plaintiff[)]."  (ECF No. 174 at 6:17-20.) However, in light of the Court's ruling today that the City shall produce Blackford investigation files, Plaintiff's request for oral argument on the relevancy of those documents is unnecessary.  Accordingly, Plaintiff's request for oral argument is **DENIED** as moot.

**3.    Deposition of Stacee Botsford**

Plaintiff took the deposition of SDPD Detective Stacee Botsford on October 29, 2013. During the course of the deposition, Kevin Phillips, counsel for the City who was also representing Detective Botsford at the deposition, instructed Detective Botsford not to answer numerous questions.  On November 8, 2013, the parties filed a redacted version of a joint motion requesting judicial resolution of their dispute as to the propriety of counsel's instructions not to answer.  (ECF No. 180.)  On November 14, 2013, the Court granted Plaintiff's motion for leave to file under seal an unredacted version of the parties' joint motion.  (ECF Nos. 181, 185.)

/ / /

### a.   Legal Standard

During a deposition an attorney may properly state objections "concisely in a nonargumentative and nonsuggestive manner." FED. R. CIV. P. 30(c)(2).  As a general rule, "instructions not to answer questions at a deposition are improper." *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000) (citing *Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727, 730 (D. Mass. 1985)).  "A person may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." FED. R. CIV. P. 30(c)(2) (emphasis added); *see also Covington v. Curtis*, No. SA CV 12-1258 FMO (ANx), 2013 U.S. Dist. LEXIS 53406, at *6 (C.D. Cal. Apr. 12, 2013) (recognizing that Rule 30(c)(2) "provides the 'exclusive grounds for instructing a deponent not to answer.'") (quoting *Shapiro v. Paul Revere Life Ins. Co.*, No. C-96-1758 FMS (JL), 1997 U.S. Dist. LEXIS 16286, at *2 (N.D. Cal. Sept. 18, 1997)) (citing *Detoy*, 196 F.R.D. at 367 ("Counsel shall refrain from instructing a witness not to answer, except as provided in Rule 30[(c)(2)].")).  "If a party believes that a particular question asked of a deponent is improper for any other reason, that party may object; however, 'the examination still proceeds; the testimony is taken subject to any objection.'" *Mendez v. R+L Carriers, Inc.*, No. CV 11-02478-CW (JSC), 2012 U.S. Dist. LEXIS 60148, at *3 (N.D. Cal. Apr. 30, 2012) (quoting FED. R. CIV. P. 30(c)(2)) (citing *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-03073 MMC (EDL), 2007 U.S. Dist. LEXIS 98149, at *3 (N.D. Cal. Aug. 2, 2007)).

Under Rule 30(d)(3), "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. . . . If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." FED. R. CIV. P. 30(d)(3)(A).

### b.   Analysis

As demonstrated by the excerpts of the transcript of Detective Botsford's deposition which have been filed under seal, Mr. Phillips instructed Detective Botsford not to answer

no fewer than twenty-eight times. (ECF No. 186-1 *passim*.)  The instructions not to answer were preceded by various objections, including that the question at issue had been asked and answered, invaded the privacy rights of Detective Botsford and/or other non-parties, exceeded the scope of her deposition and/or lacked relevance, lacked foundation, sought SDPD personnel information and official information, assumed facts, and misstated Detective Botsford's prior testimony. (*Id.*)

As an initial matter, it is clear that most of Mr. Phillips' objections do not provide adequate grounds for his instructions to Detective Botsford not to answer.  As noted above, an attorney can instruct "a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  FED. R. CIV. P. 30(c)(2).  Accordingly, the Court finds that Mr. Phillips' objections that questions had been asked and answered, exceeded the scope of the deposition, lacked relevance, assumed facts, and misstated Detective Botsford's prior testimony are improper grounds for instructing Detective Botsford not to answer.  *See Covington*, 2013 U.S. Dist. LEXIS 53406, at *6 n.2 ("An attorney may not instruct a witness not to answer a question on the ground that it has been asked and answered . . . or is irrelevant."); *Jadwin v. Abraham*, No. 1:07-cv-00026-OWW-TAG, 2008 U.S. Dist. LEXIS 116780, *14 (E.D. Cal. Aug. 22, 2008) ("[A]n objection that the question might have been repetitive was not a proper basis to instruct the witness not to answer it.").

The Court will address the remaining objections in connection with the specific deposition questions.

### i.     Jane Roe Investigation

Mr. Phillips first instructed Detective Botsford not to answer in connection with questions seeking to determine whether Detective Botsford could recall what charges were submitted for prosecution in connection with the Jane Roe incident. (ECF No. 186-1 at 5-8.) The sole basis for the instructions not to answer was that the questions had been asked and answered.  As noted above, however, an attorney cannot instruct a deponent not to answer based on this objection.  Instead, the question must be answered subject to the objection.

1  FED. R. CIV. P. 30(c)(2).  Moreover, the Court's review of the transcript indicates that the

2  specific question on which Plaintiff's counsel sought clarification had not clearly been asked

3  and answered.  Accordingly, Plaintiff is entitled to complete the line of questioning that was

4  prematurely ended due to Mr. Phillips' improper instruction not to answer.

5                          ii.   *Daniel Dana Investigation*

6         Mr. Phillips next instructed Detective Botsford not to answer any questions concerning

7  the SDPD's investigation into sexual misconduct by former SDPD Officer Daniel Dana.

8  (ECF No. 186-1 at 9-13.)  The instructions not to answer these questions were premised on

9  objections that the questions invaded Mr. Dana's right to privacy, exceeded the scope of

10  Detective Botsford's deposition, lacked foundation, and sought personnel and official

11  information.  (*Id.*)  As noted above, Mr. Phillips' objections regarding scope and foundation

12  are improper grounds for instructing Detective Botsford not to answer.

13        The City argues in the joint motion that "Defendants previously lodged Officer Dana's

14  files with this Court and this Court already ruled that files relating to Dan Dana are not

15  relevant to plaintiff's claims against Arevalos and did not order them produced."  (ECF No.

16  180 at 10:1-3.)  However, as explained above, the City misinterprets the Court's order

17  denying Plaintiff's request for Officer Dana's files.  Moreover, even if the Court had ruled

18  that the documents were irrelevant, "[a] ruling that certain information is in fact irrelevant

19  does not equate to a finding that deposition questions pertaining to those matters constituted

20  harassment."  *Funk v. Town of Paradise*, No. 2:09-cv-01000-MCE-EFB (TEMP), 2011 U.S.

21  Dist. LEXIS 69434, at *5 (E.D. Cal. June 28, 2011).  In any event, a relevance objection is

22  an insufficient basis for instructing a deposition witness not to answer.  *See Covington*, 2013

23  U.S. Dist. LEXIS 53406, at *6 n.2.

24        As the Court did in its March 29, 2013 discovery order (ECF No. 87), the Court

25  overrules the objection based on the official information privilege.  As the Court explained

26  at length in that order, for the official information to apply, the party resisting discovery must

27  satisfy a substantial threshold requirement of submitting a declaration or affidavit from a

28  responsible official within the SDPD.  The City has not even attempted to support its

objections with any declaration, let alone a declaration containing the extensive information required. "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. 2005) (citation omitted). The City has failed to meet its burden with respect to the official information privilege.

However, for the same reasons the Court denied Plaintiff's motion to compel Officer Dana's file, the Court denies Plaintiff's motion to compel deposition testimony related to Officer Dana. As the Court has stated, there is no evidence that the Officer Dana incident was improperly handled by the investigating officers. Accordingly, in order to preserve the privacy of Officer Dana, a non-party, the Court does not allow further questioning of Detective Botsford on this topic.

### iii.   Discrimination Lawsuits

The third area of questions that Mr. Phillips instructed Detective Botsford not to answer related to several lawsuits filed in state court concerning allegations of discriminatory practices by supervisors in the SDPD sex crimes unit. (ECF No. 186-1 at 14-31.) The instructions not to answer these questions were premised on objections that the questions violated privacy rights, lacked relevance, and sought personnel and official information. (*Id.*)

The City argues that these questions are improper because they lacked relevance to Plaintiff's claims and because Plaintiff failed to establish a foundation as to whether any of the allegations in the state court lawsuits had any effect on any investigations into Defendant Arevalos. However, as discussed, relevance and foundation objections do not provide a basis for an instruction not to answer. Moreover, the discrimination allegations at issue *are* relevant to Plaintiff's claims in this case. Indeed, Plaintiff alleges, among other things, the existence of a culture within the SDPD wherein male officers were permitted to engage in sexual misconduct without fear of punishment. The factual allegations underlying the state court complaints are relevant to Plaintiff's claims.

1    In addition, as before, the City has failed to adequately support its objection that

2    questions regarding these lawsuits violate the official information privilege.

3    Finally, there is at least a partial waiver of Detective Botsford's privacy objection

4    given that she made the decision to publically file her verified complaint containing detailed

5    allegations of sexual harassment, hostile work environment, discrimination, and retaliation.

6    Detective Botsford cannot now claim that she is absolutely protected from discussing the

7    facts underlying her allegations.   Further, her privacy can be sufficiently protected by

8    designating her deposition as confidential pursuant to the Court's protective order.

9    Accordingly, Plaintiff is entitled to inquire into the factual allegations underlying Detective

10   Botsford's complaint.[4]

11                    *iv.    Former Captain's Address*

12   The final area of questions that Mr. Phillips instructed Detective Botsford not to

13   answer related to Plaintiff's counsel's request for the home address of a former SDPD

14   captain. (ECF No. 186-1 at 16-17.) Mr. Phillips objected on privacy grounds. (*Id.*) The

15   Court's review of the parties' joint motion demonstrates that Plaintiff is not seeking to

16   compel the answer to this inquiry. Indeed, Plaintiff's portion of the joint motion is silent on

17   this issue. Accordingly, Plaintiff's counsel is not entitled to question Detective Botsford on

18   the issue of the former captain's home address.[5]

19

20      [4] The Court recognizes there may be valid objections to certain questions.
21   However, unless the deposition questions seek to violate a valid privilege (such as the
     attorney-client privilege), violate a court order, or amount to bad faith, annoyance,
     embarrassment, or oppression, Detective Botsford should not be instructed not to answer.
22   *See* FED. R. CIV. P. 30(c)(2), 30(d)(3)(A).

23      [5] The matters actually in dispute would have been clearer had the parties properly
24   met and conferred prior to the filing of the joint motion. Pursuant to Section IB(B) of the
     undersigned Magistrate Judge's chambers rules, counsel are required to immediately
25   meet and confer when certain disputes arise during the course of a deposition. If the
     parties are unable to resolve the dispute, they may contact the Court. (*Id.*) However,
26   where, as the the case here, the Court is not available, "counsel must mark the deposition
     at the point of the dispute and continue with the deposition. Thereafter, counsel shall
27   meet and confer regarding all disputed issues" prior to filing a joint motion.

28   Here, the parties met and conferred during the deposition. However, as
     demonstrated by Exhibit Q to Plaintiff's counsel's declaration (ECF No. 180-18), counsel

*iv.   Sanctions*

Plaintiff requests that the Court set a hearing to determine whether sanctions should be imposed on the City due to its attorney's conduct during Detective Botsford's deposition. (ECF No. 180 at 8:9-13.)  "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of [a] deponent." FED. R. CIV. P. 30(d)(2).  "Courts have awarded fees and costs associated with a motion to compel and imposed re-deposition costs where defense counsel was unjustified in instructing a deponent not to answer." *Enns Pontiac, Buick & GMC Truck v. Flores*, No. 1:07cv01043 OWW DLB, 2011 U.S. Dist. LEXIS 77113, at *17 (E.D. Cal. July 12, 2011) (citing *Humphreys v. Regents of the Univ. of Cal.*, No. C 04-03808 SI, 2006 U.S. Dist. LEXIS 20148 (N.D. Cal. Apr. 3, 2006); *see also Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. 1:10-cv-00148 LJO JLT, 2011 U.S. Dist. LEXIS 67254, at *14 (E.D. Cal. June 23, 2011) ("The making of an excessive number of unfounded objections or claims to privilege is sanctionable conduct.") (citing Fed. R. Civ. P. 30 advisory committee's notes).

Here, although the City's counsel repeatedly gave Detective Botsford improper instructions not to answer, the Court, in its discretion, declines to issue sanctions. The Court is mindful of the sensitive nature of this lawsuit and the state court discrimination lawsuits on which testimony was sought. The City's counsel's instructions, while erroneous, appear to have been made in an abundance of caution in light of the sensitive issues at play. The Court deems sanctions unwarranted. An appropriate remedy is to allow a second session of Detective Botsford's deposition.

---

failed to meet and confer in person following the deposition.  Rather, they simply prepared their respective portions of the joint motion.  This is insufficient.  Moreover, Plaintiff's counsel's interpretation of the joint motion procedure is wrong.  Plaintiff's counsel's statement to Mr. Phillips that "[y]ou don't get to see my position before hand" (*Id.* at 3) demonstrates a failure to properly meet and confer on all disputed issues.  Had counsel met and conferred, Plaintiff's position would already be known.  Attempts to hide the ball do nothing to further the Court's preference that parties resolve their disputes informally.  Simply sending the City's counsel various pages of the Botsford deposition transcript is insufficient and clearly not "the way the Magistrate wants it done."  (*Id.*)

**4.  <u>Dispute Regarding Number of Depositions</u>**

The final remaining discovery issue concerns the parties' dispute over the number of depositions that Plaintiff is entitled to take.  Pursuant to the Court's October 25, 2013 Order (ECF No. 163), Plaintiff and the City each filed separate briefs on the matter.  (ECF Nos. 173, 177.)

By way of background, on September 27, 2013, the Court issued an order permitting Plaintiff to take six depositions, in addition to various depositions that the parties had agreed to take.  (ECF No. 146.)  The Court's order followed a September 20, 2013 discovery hearing at which Plaintiff's counsel identified twenty-four depositions he desired to take prior to the discovery cutoff.  In limiting Plaintiff to six depositions, the Court determined that Plaintiff had failed to make a particularized showing as to each of the depositions sought.  The Court allowed Plaintiff to select the six depositions from her list of twenty-four, and the parties were ordered to complete the depositions by the October 31, 2013 discovery cutoff.

Notwithstanding the Court's order, Plaintiff proceeded to notice the deposition of various Rule 30(b)(6) witnesses.  Specifically, as set forth in a letter dated October 4, 2013, Plaintiff sought to depose the following Rule 30(b)(6) deponents:

1.  The discipline and investigative practices, policies and procedures for misconduct alleged against an on-duty San Diego Police Department officer from January 1, 1993 to the present.

2.  The analysis, statistical or otherwise, of Anthony Arevalos' traffic stops and DUI testing, including but not limited to the data and analysis that appears at CITY-000889 to CITY-000977.

3.  The attempted, alleged or actual cover up of the DUI of SDPD Detective Jeffrey Blackford as discussed at pages 140-162 of the Castro deposition and pages 239-240 of the Lansdowne deposition.

4.  The multiple instances of alleged officer misconduct and the explanations therefore, as discussed by Lansdowne in his press conference of May 10, 2011, and summarized in the attached article.

5.  Any actual or alleged complaints of sexual assault, battery, rape, harassment or related claim against a sworn member of the SDPD from January 1, 1997 to the present.

1 (ECF No. 177-3 at 2.)

2      The City responded to Plaintiff's letter on October 16, 2013.  (ECF No. 177-7.)  Of

3 particular importance, the City objected to the Rule 30(b)(6) topics numbered 1, 4, and 5.

4 (*Id.*)  Plaintiff now seeks to compel these depositions.  Plaintiff also seeks to compel a

5 follow-up deposition on topic number 3 on grounds that the witness produced, Lt. Timothy

6 Saelens, only qualified as the Rule 30(b)(6) deponent as to the Internal Affairs investigation

7 of the Blackford incident, and that Sgt. Leonard Flake should have also been produced to

8 testify as to the criminal investigation into the incident.

9      Importantly, none of the Rule 30(b)(6) witnesses identified in Plaintiff's October 4,

10 2013 letter were contemplated at the September 20, 2013 hearing or by the Court's order

11 permitting six additional depositions.  Plaintiff argues that she "made it clear" at the hearing

12 that she would be noticing the City's deposition pursuant to Rule 30(b)(6).  (ECF No. 177

13 at 3:28.)  However, the Court notes that the only Rule 30(b)(6) deposition Plaintiff raised at

14 the hearing concerned the SDPD's reporting policies, document retention policies, and

15 training manuals.  (ECF No. 147 at 52:15-23.)  These topics, which Plaintiff's counsel

16 characterized at the hearing as "important cleanup" (*id.* at 52:20), are much different than

17 the Rule 30(b)(6) depositions Plaintiff now seeks to compel.

18      Perhaps in recognition that she made no attempt to demonstrate a particularized

19 showing of the need for these depositions when given the opportunity to do so, Plaintiff's

20 brief now makes an impassioned plea regarding the critical need for the depositions.

21 However, Plaintiff cannot be allowed to disregard the Court's prior order limiting the

22 number of depositions to six out of a list of twenty-four specific deponents.  Accordingly,

23 the Court **DENIES** Plaintiff's motion to compel the disputed Rule 30(b)(6) depositions.[6]

24 Discovery is closed except as to those matters specifically allowed by this order.

25

26      [6] Even were the Court to address Plaintiff's belated attempt to make a
particularized showing of the need for these depositions, the Court has serious concerns
27 that the expansive scope of the Rule 30(b)(6) topics would result in dozens of City
deponents.  Such extensive discovery would not be warranted at this late stage in the
28 litigation.

**CONCLUSION**

Based on the foregoing analysis, IT IS HEREBY ORDERED:

1.    Plaintiff's motion to compel disclosure of the documents submitted to the Court for *in camera* review is **GRANTED IN PART**. On or before **January 3, 2014**, the City shall produce the following documents:

        (a)    BLACKFORD001 through BLACKFORD00413;

        (b)    BLACKFORD00415 through BLACKFORD00707;

        (c)    BLACKFORD00713 through BLACKFORD00932;

        (d)    BLACKFORD00940 through BLACKFORD00962;

        (e)    BLACKFORD01007;

        (f)    BLACKFORD01012 through BLACKFORD01054;

        (g)    BLACKFORD01077 through BLACKFORD01114;

        (h)    BLACKFORD01133 through BLACKFORD01436;

        (i)    BLACKFORD01520 through BLACKFORD01623;

        (j)    BLACKFORD01696 through BLACKFORD01714;

        (k)    BLACKFORD01725 through BLACKFORD01726;

        (l)    12-176.IA777 through 12-176.IA782; and

        (m)    the Standardized Purge Forms for each SDPD personnel who is either a Defendant in this case or whose personnel filed were produced to the Court for *in camera* review at any time during this litigation.

2.    Prior to producing any of the documents, the City shall redact information consistent with this Court's prior orders dated March 29, 2013 (ECF No. 87) and May 10, 2013 (ECF No. 105). Specifically, the City shall redact all phone numbers, address, dates of birth, social security numbers and financial information. The City shall also redact the names of persons not employed by the City, as well as those persons' personal information. The City shall not redact the names of any person employed by the City or its police department.

3.   The documents produced by the City in compliance with this Order shall be governed by the Court's March 8, 2013 Protective Order (ECF No. 83) and shall be marked "Confidential" pursuant to Paragraph 1(b) of that Protective Order.

4.   Plaintiff's request for oral argument (ECF No. 174) is **DENIED** as moot.

5.   Plaintiff's motion to compel an additional session of Detective Stacee Botsford's deposition is **GRANTED**.  The areas of inquiry shall be limited to those permitted by this order.  The deposition shall be completed on or before **January 8, 2014**.[7]

6.   Plaintiff's request for sanctions concerning the Botsford deposition is **DENIED**.

7.   Plaintiff's motion to compel the disputed Rule 30(b)(6) depositions is **DENIED**.

8.   On or before **December 18, 2013**, the City shall contact the chambers of the undersigned Magistrate Judge in order to arrange for retrieval of all documents previously lodged by the City for *in camera* review.

**IT IS SO ORDERED.**

DATED:  December 13, 2013

DAVID H. BARTICK
United States Magistrate Judge

---

[7] The record is not entirely clear how long Detective Botsford's October 29, 2013 lasted.  Plaintiff is permitted to use the balance of the seven hours permitted under Federal Rule of Civil Procedure 30(d)(1).

16