EXHIBIT A

**FILED**
SAN DIEGO SUPERIOR COURT

FEB 25 2014

CLERK OF THE SUPERIOR COURT
BY_____C. SARNO_____

# THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF:

ANTHONY AREVALOS,

Petitioner.

HC 21463
SCD 233024

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On November 17, 2011, petitioner was convicted by jury of one count of sexual battery by restraint (count one: Penal Code § 243.4(a))[1], and one count of assault and battery by a peace officer (count three: Penal Code § 149) as to victim Jane Doe. Petitioner was also convicted of five counts of soliciting a bribe (Penal Code § 68), four counts of misdemeanor false imprisonment (Penal Code §§ 236, 237(a)), and an additional count of assault and battery by a peace officer as to Jane Doe and additional victims.

Petitioner was sentenced to eight years eight months in prison—three years on the sexual battery count, consecutive one-year terms on the bribery counts, and a consecutive eight-month term on one of the counts of assault and battery by an officer. The court stayed sentence on the other count of assault and battery by an officer and on the four counts of false imprisonment under section 654.

On July 19, 2013, petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, Fourth Appellate District, Division One (Case No. D064268).

---

[1] This offense was the most serious offense for which petitioner was convicted, resulted in the longest prison term, and a sex offender registration requirement pursuant to Penal Code § 290.

ORDER - 1

Petitioner challenged his conviction on counts one and three on the basis that the prosecution violated its obligation pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*), to turn over to defense exculpatory, material evidence prior to the trial. Specifically, the prosecution failed to disclose victim Jane Doe's handwritten notes detailing the encounter which formed the basis for counts one and three. Her notes omitted any mention of petitioner touching her vagina.[2]

On October 23, 2013, the Court of Appeal issued an Order to Show Cause and ordered the return to be filed with the Superior Court no later than November 15, 2013, with instructions that the Superior Court conduct an evidentiary hearing in the matter.[3] On November 15, 2013, respondent filed its return to the order to show cause. Petitioner filed his traverse on November 27, 2013. An evidentiary hearing was held on February 7, 2014, during which this court heard testimony from a single witness, petitioner's trial counsel, Ms. Gretchen Von Helms.

The parties stipulated that for purposes of the petition, the only *Brady* issue for this court to determine is whether the notes are material and that failure to disclose them deprived petitioner of a fair trial. The record and facts available to this court for review on the petition for writ of habeas corpus support the position that materiality is the sole issue in contention. Therefore, this court examines only the issue of materiality of the notes.[4]

Petitioner claims the notes are material because they impeach Jane Doe's

---

[2] Exhibit C to respondent's return to the order to show cause is a true and correct copy of Jane Doe's notes.

[3] The Court of Appeal ordered the Superior Court to "conduct an evidentiary hearing as required and determine the matter." (October 23, 2013, Order.) The Court cited Penal Code § 1484 and *People v. Romero* (1994) 8 Cal.4th 728, 740.)

[4] The trial court record contains several references to the fact that the victim made notes regarding the incident. (Jane Doe Trial Testimony, RT Vol. 11, pp. 2506, 2509; Officer Kelly Besker Trial Testimony, RT Vol. 12, p. 2546.) Sergeant Peter Brown also noted in his narrative of Jane Doe's report of the incident that Jane Doe told him she was so upset by the incident she could not sleep and made notes about the incident. (Exhibit F to Return, p. 2.) Sergeant Brown's narrative was turned over to the defense as discovery. Hence, both parties had notice of the existence of the notes from Sergeant Brown, a video of Detective Adams and Jane Doe, and Jane Doe's trial testimony. Yet during the trial neither side questioned her about the contents of her notes. Nonetheless the parties have agreed that the notes were not disclosed to the defense for *Brady* purposes and thus failure to disclose is not an issue for determination in this petition. However, these facts completely undermine the petitioner's claim that the notes were intentionally secreted by police with the goal of compromising petitioner's right to a fair trial.

ORDER - 2

credibility about whether the touching actually occurred. Further, the omission of the vaginal touching from her notes supports the claim Jane Doe fabricated the sexual battery offense in order to bolster the criminal case and her civil suit against petitioner. Petitioner argues the notes were not cumulative of any other impeachment evidence as to the vaginal touching and that he never expressly admitted to the touching. Hence, there is a reasonable probability that petitioner would not have been convicted of counts one and three if the notes had been available at trial to defense.

Respondent contends the notes are not material and are merely cumulative of other impeachment evidence regarding Jane Doe's failure to report the vaginal touching to several persons she spoke with after the incident. Respondent also argues the pretext phone call between Jane Doe and petitioner corroborates the touching because petitioner admitted the offense during the call.

**Facts[5]**

On March 8, 2011, petitioner pulled Jane Doe over for a DUI investigation in the downtown area of San Diego. He asked her if she wanted to make a deal and what was it worth to her to get out of the DUI. He suggested another woman had given him her bra and panties. At his suggestion they went to a nearby 7-Elevean. Inside the restroom he watched her get undressed. Jane Doe further claimed he touched her vagina.

Soon after the March 8, 2011 incident with petitioner in the 7-Eleven bathroom, Jane Doe spoke with family, friends, and two San Diego police officers about the incident, but did not mention vaginal touching to any of them. (11 Reporter's Transcript pp. 2305-2318; 12 R.T. pp. 2510, 2536.) At the suggestion of her boyfriend, Jane Doe called Officer Kelly Besker and asked him for advice. Besker told her to record the relevant facts of the event. (11 R.T. pp. 2506, 2509; 12 R.T. p. 2546.) Within the initial 18 hours after the incident, Jane Doe prepared handwritten notes about the incident, but did not mention in the notes that vaginal touching occurred in the bathroom. The notes however, otherwise recount explicit details of the encounter in the bathroom consistent

---

[5] These facts derive from the trial record and documents submitted in support of the petition as well as the "factual stipulations" submitted by the parties on February 3, 2014, which are supported by the record.

ORDER - 3

with those to which Jane Doe testified. Jane Doe first disclosed the fact that petitioner touched her vagina in the 7-Eleven bathroom on the evening of March 9, 2011, 18 hours after the incident, in a phone conversation with Sergeant Peter Brown. Jane Doe testified that she admitted the touching to Sergeant Brown because he asked her if she had been touched and she did not believe it was right to lie to a police officer. (11 R.T. pp. 2510, 2536.)

In the evening of March 9, 2011, Detective Lori Adams and Sergeant Albrektsen visited Jane Doe at her residence. Jane Doe described the incident with petitioner including the vaginal touching. Jane Doe gave her prepared notes to Detective Adams along with the underwear she had given to petitioner during the encounter, which petitioner later returned to Jane Doe. Detective Adams processed the underwear using the standard evidence collection procedures of the San Diego Police Department. She did not impound Jane Doe's handwritten notes, but placed the notes in her working case binder and did not disclose the existence of the notes to the District Attorney's office. Detective Adams impounded the notes into evidence after petitioner filed his petition for writ of habeas corpus.[6]

On the evening of March 10, 2011, around 8:00 pm, Detective Adams conducted two controlled phone calls between petitioner and Jane Doe.[7] The second call was made with the specific purpose of getting petitioner to admit that he touched Jane Doe's vagina during the incident in the bathroom.

**Judicial Notice**

On February 7, 2014, petitioner submitted a request for judicial notice of all the clerk's and reporter's transcripts of the trial in this case; the sworn deposition of Detective Lori Adams taken on October 25, 2013, in *Jane Doe v. City of San Diego*, case no. 12-CV00689 MMA (DHB); and the sworn declaration of Melissa W., signed on June 6, 2012, and provided in *Melissa W. v. City of San Diego*, case no. 12-CV-1262

---

[6] The parties agree the District Attorney did not know of the existence of the notes and did not commit any ethical violations by failing to disclose them to defense.

[7] This court has reviewed both the written transcript of the phone calls and the audio/video recording of the second pre-text call for purposes of this petition.

ORDER - 4

DMS (BGS). The request was made pursuant to Evidence Code §§ 452 and 459. The request is granted as to the first and second items. The court takes judicial notice of the existence of the clerk's and reporter's transcripts and the sworn declaration of Detective Lori Adams, but not of any facts asserted in either category of information. The court declines to take judicial notice of the sworn declaration of Melissa W. because it is not relevant to this petition. (See *Mozzetti v. City of Brisbane* (1977) 67 Cal.App.3d 565, 578.)

**Prosecution's Duty Under *Brady***

In *Brady* the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady, supra*, 373 U.S. at p. 87.) The duty to disclose such evidence exists even though there has been no request by the accused (*United States v. Agurs* (1976) 427 U.S. 97, 107), and the duty encompasses impeachment evidence as well as exculpatory evidence (*United States v. Bagley* (1985) 473 U.S. 667, 676), and extends even to evidence known only to police investigators and not to the prosecutor (*Kyles v. Whitley* (1995) 514 U.S. 419, 438).

In order to comply with *Brady* the prosecutor "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." (*Kyles, supra*, 514 U.S. at p. 437.)

Here, the parties do not dispute and the record establishes the notes are favorable impeachment evidence for the defense and were not provided to defense any time prior to trial, conviction, or sentencing. Therefore, the only issue for this court to decide is the materiality of the notes.

**Materiality**

In *Kyles, supra*, the United States Supreme Court held that a showing of materiality does not require a demonstration by a preponderance of the evidence that disclosure of suppressed evidence would have ultimately resulted in the defendant's acquittal. Rather, "materiality" requires a "reasonable probability" of a different result

ORDER - 5

had the evidence favorable to the defendant not been suppressed. (*United States v. Bagley* (1985) 473 U.S. 667, 682.) The "different result" refers to a different result in the ultimate outcome of the entire case – a different result in the verdict. (See *People v. Hoyos* (2007) 41 Cal.4th 872, 918; see also *People v. Zambrano* (2007) 41 Cal.4th 1082, 1132 [disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421].) "A constitutional error occurs [...] only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." (*U.S. v. Bagley* (1985) 473 U.S. 667, 678.)

> The determination of materiality for *Brady* claims " 'is necessarily fact specific' " [citation], yet courts are called upon in each case to assess the probable effect of withholding such evidence on the outcome. [...] In determining whether there is a reasonable probability that disclosure of such evidence would have yielded a different outcome under *Brady*, " 'the court must consider the nondisclosure dynamically, taking into account the range of predictable impacts on trial strategy.' " [Citation.]

(*People v. Gaines* (2009) 46 Cal.4th 172, 184.) For purposes of analyzing materiality, the court considers both the evidence submitted in support of the petition for writ of habeas corpus and the record of the trial. (*In re Brown* (1998) 17 Cal.4th 873, 888.) The focus of the inquiry is fairness. (*Eulloqui v. Superior Court* (2010) 181 Cal.App.4th 1055, 1067-68.)

The existing body of *Brady* case authority[8] reveals that in analyzing the reasonable probability of a different result courts have looked to several factors: the importance of the prosecution witness or evidence to the case; the uniqueness of the prosecution witness; the relevance of the favorable evidence; the overall strength of the prosecution's case; the corroboration of an impeachable prosecution witness; the uniqueness or cumulativeness of the favorable evidence; and the extent of the conflict between the withheld evidence and the prosecution's evidence. This court examined

---

[8] See for example: *People v. Martinez* (2002) 103 Cal.App.4th 1071, 1081-1082; *People v. Salazar* (2005) 35 Cal.4th 1031, 1051; *People v. Seaton* (2001) 26 Cal.4th 598, 648-649; *United States v. Ross* (2004) 372 F.3d 1097, 1108; *Banks v. Dretke* (2004) 540 U.S. 668, 700-701; *Williams v. Woodford* (2002) 306 F.3d 665, 696-697; *Sassounian v. Roe* (2000) 230 F.3d 1097, 1107.

each of these factors in terms of the notes and evidence relevant to this case.

Here, the notes could have been used to impeach Jane Doe as to whether or not her claim of vaginal touching was true. Jane Doe was the only live witness to testify about the vaginal touching; her testimony and credibility were unique and essential to establishing whether the offense was committed. She was such a crucial prosecution witness that if the jury did not believe her, the jury would not have convicted the petitioner on these counts. The notes reflected her mindset at a critical point in time which potentially could undermine her allegations. The pretext call was introduced into evidence and intended to corroborate her testimony, but as will be discussed in further detail below, was not unequivocal to the point of clearly corroborating the touching and rendering the fact of omission in the notes immaterial.

Respondent contends that the notes fall within the same category of impeachment evidence as Jane Doe's failure to recount the touching to her boyfriend, friend, mother, sister, Officer Besker and Deputy Dustin Hollins prior to finally revealing the touching to Sergeant Brown. In short, the notes are cumulative.

Jane Doe's failure to communicate the touching to others and to write it in her notes are similar in that both present an opportunity to impeach Jane Doe's testimony on this issue. (See *People v. Price* (1991) 1 Cal.4th 324, 412.) It is an undisputed fact the notes were prepared by Jane Doe within 18 hours of the offense, when it was still fresh in her mind and the details were clear. Thus, in terms of the timing, the notes are strong impeachment of a prior inconsistent statement. (See *Id.*)

Jane Doe explained that the omission of the touching from her discussions with others about the encounter was due to her embarrassment about what she did to escape the DUI offense, a fact that would not explain her failure to document the touching in her notes.

Jane Doe's failure to include the touching in her notes seems irreconcilable with this explanation. The notes were apparently written while Jane Doe was alone and most likely could have been kept private and undisclosed to anyone at her sole discretion. Thus, in the eyes of the jury it would have been a greater challenge to explain away the

ORDER - 7

omission by claiming embarrassment. She also appears to have edited the notes at some point in time before giving them to Detective Adams. For example, she crossed out "Mexican" and wrote in "Hispanic", and crossed out "tits" and wrote in "breasts". If she knew others, in particular law enforcement, would see the notes, she would likely have included the touching along with the other, specific facts in her narrative.

Had the defense been aware of the notes, it could have used this inconsistency in the notes and testimony to argue the touching never occurred. Ms. Von Helms testified as much at the evidentiary hearing. The defense could further argue that Jane Doe is fabricating the touching to bolster her civil law suit against the petitioner.[9]

As such, evidence of the omission from the notes is unique evidence; no notes written by Jane Doe regarding the incident were presented to the jury. Jane Doe was not impeached with the failure to include the information in her personal notes. While there was substantial testimony regarding Jane Doe's failure to disclose the touching to her boyfriend, mother, sister, friend, and the officers, this evidence was not used to impeach Jane Doe as to whether or not the touching actually occurred, but only as to whether or not the touching was consensual. (See defense closing arguments, 13 R.T. 3451-3464.) In contrast, the notes could have readily been used for the purpose of impeaching Jane Doe as to whether or not the touching actually occurred.

Thus, the notes are not cumulative or duplicative of the impeachment that occurred at trial. The value of the notes to the defense on the charge of vaginal touching is unique and was not represented at the trial by any other evidence.

The only evidence to corroborate Jane Doe's testimony as to the vaginal touching was the pretext call between Jane Doe and petitioner, specifically the second call. Following is a summary of the portion of the second pretext call in which Jane Doe and petitioner discuss the encounter.

---

[9] The court recognizes that the first report of the touching was made within 18 hours of the offense and it is somewhat of a challenge to imagine that in those first few hours Jane Doe's main motivation was to remake the offense in a way that could more heartily earn her monetary gain at some unforeseen point in the future at a time when neither a civil nor criminal action were currently pending against petitioner and there was no real indication that either of those suits would eventually materialize. Even so, it was an argument which petitioner was entitled to make at trial, and which could more thoroughly have been supported by information that Jane Doe omitted the fact of touching from her personal notes.

ORDER - 8

Jane Doe expresses her concern to petitioner that what she did in the bathroom was not enough to escape the DUI and reminds petitioner that he told her he wanted to touch her, but then he stopped. (Second pretext call, p. 2 lines 23-24.) Petitioner asks what would have been enough, and does not dispute that he asked to touch her, but then stopped. (Id. p. 3, line 6-8.) Jane Doe insists that it seemed petitioner got mad or upset when he "stopped touching" her and she was concerned their deal would not hold up. Petitioner responds "no, no, no, no, not at all,...I don't want you to think that." (Id., p. 5, lines 9-11.) Jane Doe again stated her concern that because he stopped touching her the deal might not work. Petitioner responded "Oh, well...well, I...I...I had asked you. You know I told you, you know, are you comfortable. 'No, I'm not comfortable and stuff,' so I didn't want to make you so uncomfortable that, you know that [...] it's gonna be okay." (Id. p. 5, lines 21-27.)

Petitioner continued to reassure her that he is not going to report the stop. Jane Doe then states "I was just surprised that you stopped before I orgasmed, I just figured that's what you wanted." Petitioner responded "I definitely wanted you to feel good, I definitely wanted that. I just didn't think you have enough time because you were in a rush, you were on the way out. You know I mean, I...I...I....Yeah, that would have been ideal. You know it would have been perfect, would have been cool. But just because that did not happen...just because it was just timing. I mean I was trying to get you to work as soon as possible as well." (Id. p. 6, lines 19-26.) Jane Doe then asks if petitioner liked it and says she felt as if he did not like what he was doing to her. Petitioner then responds: "You know what, how come...I did, I...I...I absolutely did. Well like I said, would I have liked it longer, of course. Of course 'cause I wanted you to...to be relaxed during it, and I...I didn't feel you at all relaxed during it, so I...I was just like, okay, you know what, let me just stop right now, in my mind, let me just stop right now and then we'll just go forward from here." (Id. p. 7, lines 3-7.)

Jane Doe then asks petitioner what he liked best about her body, her breasts or vagina. (Id. p. 9, lines 17-18.) Petitioner said he likes the whole package and Jane Doe presses him to pick her breasts, buttocks, or vagina. Petitioner then responds that her

ORDER - 9

vagina was "very nice". (*Id.* p. 9, lines 17-27.) Jane Doe asks what petitioner's favorite part was and he says "the initial time that I...that...the instant moment that I touched you, the skin texture, the temperature, the way it felt, everything was like perfect. Jane Doe asks "my vagina, right, when you touched that?" Petitioner responds "I mean I...what do you want me to tell you? What do you want me to say to you?" (*Id.* p. 10, lines 12-14.)

Jane Doe asked petitioner if he went back to the 7-Elevan bathroom and thought about her, about touching her, about her vagina. (*Id.* p. 14, lines 26-28.) She tells petitioner he's "a dirty little one too, touching me down there". Petitioner responds "I don't know what you're talking about." Jane Doe laughingly responds "oh, really!" Petitioner laughs and says he wants to see her face, see how it looks when she's asking these questions in person so he can tell what kind of person she really is. He accuses her of being all talk and she says "I wasn't all talk in the bathroom, was I?" Petitioner responds "I have no idea what you are talking about." (*Id.* p. 15 lines 1-20.)

Petitioner's tone throughout the discussion is clear, at ease, and does not appear to be confused or shocked by anything Jane Doe says. He does not expressly concede the touching, nor does he deny it. Rather, he seems to follow Jane Doe's lead. Petitioner's tone is never hostile, always reassuring and at times flirtatious, particularly when the talk turns to whether or not he enjoyed the encounter in the bathroom. He does ask to see Jane Doe again to ease her mind about the arrest and concludes their conversation by asking if he can text her later. (*Id.* pp. 8, lines 21-23; p. 15, lines 25-27.) Clearly the prosecutor could forcefully argue the petitioner admitted to the touching based on the overall context of the conversation. The petitioner could have conclusively denied the touching, but he did not. A jury could have concluded this was an adopted admission.

However, a strong argument could be made that petitioner was merely going along with Jane Doe's tone and topic for the purpose of trying to see her again for another encounter. Thus, in light of the omission of the touching from the notes, the defense could have reasonably argued that the tape was ambiguous and equivocal and

ORDER - 10

did not establish an adoptive admission. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1189-1190, question of whether conduct constitutes adoptive admission is a question for the jury to decide.) As such, it cannot be said that apart from Jane Doe's testimony, there was overwhelming evidence of guilt in the form of the pretext call. (Cf. *In re Sassounian* (1995) 9 Cal.4th 535, 549.)

At the evidentiary hearing, Ms. Von Helms testified that if she had possessed the notes, she would have spent significant time cross-examining Jane Doe on her failure to mention the touching. She would have argued that the failure to include the touching in the notes signaled that the touching did not in fact occur.

Ms. Von Helms is a very good advocate who would have used the omission to pursue a very different defense strategy. In particular, she could have used the notes to frame her arguments and the jury's thinking about the pretext call. The notes would have permitted defense to frame Jane Doe's credibility in a way that the jury was not otherwise challenged to do by the evidence before it. Indeed, the defense in closing argument conceded the touching, arguing instead about whether it was consensual. Thus, the jury was never challenged to consider that it might not have occurred. The contents of the pretext call are not such as to foreclose any argument that the conversation could be interpreted in different ways. It left room for argument that Petitioner's conversation with Jane Doe could have been explained in a way that did not concede the touching.

Petitioner's inability to make these arguments at trial is significant in light of the fact Jane Doe was the only live witness to the vaginal touching. Her credibility was paramount and it was never challenged as to whether or not the touching actually occurred, but only as to whether or not it was with or without her consent. This court's confidence in the outcome of the trial is undermined by the fact the jury was never challenged to consider the testimony of Jane Doe and the pretext call in the context of an argument that the touching never occurred. The court is not confident that the jury's verdict would have been the same had the notes been available to the defense at trial. It is reasonably probable that petitioner would have obtained a different result if the notes

had been disclosed.

Pursuant to the foregoing, the petition for writ of habeas corpus is GRANTED as to the convictions on counts one and three. The convictions on these two counts are vacated. Petitioner shall be resentenced on the remaining counts upon expiration of the time for respondent to appeal if no timely appeal is taken from this order.[10] (See Jackson v. Superior Court (2010) 189 Cal.App.4th 1051, 1064-1065.)

A copy of this Order shall be served upon Petitioner, through his counsel Patrick Morgan Ford, 1901 First Avenue, Suite 400, San Diego, CA 92101; the San Diego Office of the District Attorney (attn.: Martin E. Doyle), 330 West Broadway, Suite 860, San Diego, CA 92101; the Office of the Attorney General (attn.: Scott Taylor) 110 West A Street, Suite 1100, San Diego, CA 92101; California Substance Abuse Treatment Facility and State Prison, Corcoran, P. O. Box 7100, Corcoran, CA 93212 (attn.: Warden Stu Sherman).

IT IS SO ORDERED.

DATE: 2-25-14

FEB 25 2014

JEFFREY F. FRASER
JUDGE OF THE SUPERIOR COURT



CLERK'S CERTIFICATE

The foregoing document, consisting of 12 page(s), is a full, true, and correct copy of the original copy on file in this office.

Clerk of the Superior Court

FEB 25 2014
Date    Deputy    L. Oliveros

---

[10] The court recognizes that respondent, at its discretion, may appeal the order granting this petition or retry petitioner on counts one and three. The court expresses no opinion as to any decision respondent might make. The court seeks only to clarify that resentencing may become necessary depending on the procedural course which follows this order and the parties should follow up with the court.

ORDER - 12