1  Daley & Heft, LLP
   Attorneys at Law
2  Mitchell D. Dean, Esq. (SBN 128926)
3  Michelle L. Gearhart, Esq. (SBN 263573)
   462 Stevens Avenue, Suite 201
4  Solana Beach, CA  92075
   Telephone:  (858) 755-5666
5  Facsimile:  (858) 755-7870
   E-mail:     mdean@daleyheft.com
6              mgearhart@daleyheft.com
7
   Associated with:
8
9  Jan I. Goldsmith, City Attorney
   Daniel F. Bamberg, Assistant City Attorney
10 Donald F. Shanahan, Chief Deputy City Attorney
   Christina M. Milligan, Deputy City Attorney
11 California State Bar No. 231655
   Keith Phillips, Deputy City Attorney
12 California State Bar No. 190664
   Office of the City Attorney
13 1200 Third Avenue, Suite 1100
14 San Diego, California 92101-4100
   Telephone:  (619) 533-5800
15 Facsimile:  (619) 533-5856
   Email:     milliganc@sandiego.gov
16
17 Attorneys for Defendant, City of San Diego

18              **UNITED STATES DISTRICT COURT**

19            **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 20  JANE DOE, an individual, | Case No.: 3:12-cv-00689-MMA (DHB) |
| 21             Plaintiff, | **MEMORANDUM OF POINTS AND** |
| 22        v. | **AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN DIEGO'S MOTION TO BIFURCATE** |
| 23  THE CITY OF SAN DIEGO, et al. | **TRIAL** |
| 24             Defendants. | |
| 25 | [Special Briefing Schedule Ordered] |
| 26 | Date:  May 27, 2014 |
| 27 | Time:  2:30 p.m. |
| | Courtroom.:  3A |
| 28 | Judge: Hon. Michael M. Anello |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Magistrate Judge: Hon. David H. Bartick
Complaint filed:  March 21, 2012
Trial date: August 12, 2014

1

<u>TABLE OF CONTENTS</u>

2   I.    INTRODUCTION ................................................................................ 1

3   II.   PLAINTIFF'S *MONELL* CLAIM AGAINST THE CITY MUST BE BIFURCATED . 2

4         A.   Bifurcation of *Monell* Claims Against Municipalities is Appropriate
                and Routine. ................................................................................ 2

5

6         B.   Bifurcation Will Avoid Undue Prejudice, Juror Confusion, and
                Consumption of Judicial, City & SDPD Resources .......................... 3

7         C.   California Indemnification Statues Make Plaintiff's *Monell* Claim
                Moot ............................................................................................ 6

8

9         D.   An Inflamed Jury Will Render an Improper Punitive Verdict .......... 9

    III.  CONCLUSION .................................................................................. 10
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. City of L.A.*
    2012 U.S. Dist. LEXIS 65775 (C.D. Cal. May 7, 2012)................................3, 5

*Atencio v. Arpaio*
    2013 U.S. Dist. LEXIS 137783, 14-16 (D. Ariz. Sept. 24, 2013) ...............3, 4

*Board of County Comm'rs of Bryan Cty v. Brown*
    520 U.S. 397, 436................................................................................9

*Calmar, Inc. v. Emson Research*
    850 F. Supp. 861, 866 (C.D. Cal. 1994)..........................................2, 9

*CGI Techs. & Solutions, Inc. v. Rose*
    683 F.3d 1113, 1125 (9th Cir. Wash. 2012) ...........................................6

*Chew v. Gates*
    27 F.3d 1432, 1437 & 1439 (1994)........................................................8

*Choate v. County of Orange*
    86 Cal. App. 4th 312, 329 (Cal. App. 4th Dist. 2000) ...................7, 8, 9

*City of Los Angeles v. Heller*
    475 U.S. 796, 799 (1986)......................................................................3

*City of Newport v. Fact Concerts, Inc.*
    453 U.S. 247 (1981)...............................................................................9

*Danjaq LLC v. Sony Corp.*
    263 F.3d 942, 962 (9th Cir. Cal. 2001) ...............................................9

*Davis & Cox v. Summa Corp.*
    751 F.2d 1507, 1517 (9th Cir. 1985)...................................................2

*eBay Inc. v. MercExchange, L.L.C.*
    547 U.S. 388, 391 (2006)......................................................................9

*Garcia v. City of Imperial*
    2010 U.S. Dist. LEXIS 105399 (S.D. Cal. Oct. 4, 2010).......................3

*Gates v. Rivera*
    993 F.2d 697, 700 (9th Cir. 1993).........................................................5

*Green v. Baca*
    226 F.R.D. 624 (C.D. Cal. 2005) ...........................................................4

*Green v. County of L.A.*
    2014 U.S. Dist. LEXIS 5895, 1, 2014 WL 174988 (C.D. Cal. 2014)............3

Hamilton, *The Importance and Overuse of Policy and Custom Claims: A View from One Trench* (1999) 48 DePaul L.Rev. 723, 730 .................................................................................7

*Jackson v. City of Bremerton*
    268 F.3d 646, 653-654 (9th Cir. Wash. 2001) ................................................3

*Jones v. City of Chicago*
    856 F.2d 985, 995 (7th Cir. 1988)...................................................................7

*Larez v. City of Los Angeles*
    946 F.2d 630, 640, 645 (9th Cir. 1991)........................................................3, 8

*Los Angeles v. Lyons*
    461 U.S. 95, 111 (1983)..................................................................................9

*Maddox v. City of Los Angeles*
    792 F.2d 1408, 1417 (9th Cir. 1986)...............................................................5

*Martin v. Heideman*
    106 F.3d 1308, 1311 (6th Cir. 1997)...............................................................2

*Monell v. Dep't of Soc. Servs.*
    436 U.S. 658.................................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11

*Murphy v. Long Beach*
    914 F.2d 183, 185 (9th Cir. Cal. 1990) ...........................................................3

*Quintanilla v. City of Downey*
    84 F.3d 353, 354-355 (9th Cir. Cal. 1996).......................................................3

*Ruvalcaba v. City of Los Angeles*
    167 F.3d 514, 518, 523-524 (9th Cir. Cal. 1999)......................................3, 4, 7, 8

*Sanchez v. City of Riverside*
    596 F.Supp. 193, 194, 195 (C.D. Cal. 1984)...........................................3, 7, 8

*Santos v. Gates*
    287 F.3d 846, 850-851 (9th Cir. Cal. 2002) ....................................................3

*US Airways, Inc. v. McCutchen*
    663 F.3d 671, 679 (3d Cir. 2011).....................................................................6

*Williams v. Horvath*
    16 Cal.3d 834, 842-843 (Cal. 1976).................................................................7

1

**Statutes**

2

42 U.S.C. § 1983 .................................................................3, 7, 9

3

Federal Rule of Evidence 404(b) ...........................................................5

4

Federal Rule Civil Procedure 42(b) ....................................................2, 3, 10

5

Federal Rule Evidence 403 ...............................................................5

6

Government Code section 825(a)........................................................5, 7

7

Government Code section 818 ...........................................................10

8

Government Code sections 815(a) and 815.2 .............................................1

9

**Other Authorities**

10

California Tort Claims Act..............................................................7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

The City of San Diego seeks an order bifurcating plaintiff's claim for municipal liability ("*Monell*") and her equitable claim for a monitor, from her claim for damages based on the events of March 8, 2011.[1] Courts routinely bifurcate trials in this manner for multiple reasons, including the avoidance of undue prejudice and consumption of judicial time and resources. Given the voluminous and prejudicial nature of the evidence relevant only to the *Monell* and monitoring claims, bifurcation in this manner will ensure the jury's verdict is based upon the events of March 8, 2011, and not upon impermissible passion or an improper punitive award against the City. Bifurcation will allow plaintiff to present evidence to a jury in support of her damage claims, while at the same time preserving the City's right to have a jury base a damages verdict solely on the events of March 8, 2011, and not upon cumulative evidence relating to other events or sweeping allegations regarding the San Diego Police Department ("SDPD") as a whole. Further, because plaintiff's *Monell* claim and equitable claim for injunctive relief will likely be moot after the first phase of trial, a bifurcation order will save considerable judicial time and resources.

In the interests of judicial economy and efficiency, and to avoid undue prejudice, the City proposes that trial be bifurcated (or trifurcated, as necessary) into the following phases: Phase 1 would consist of a jury trial regarding the events of March 8, 2011 and evidence of plaintiff's claimed damages that were caused by that incident, as well as a determination by the jury of whether punitive damages should be assessed against Arevalos.[2] This phase would be relatively short (perhaps 7-10 days at the most) and would likely consist of testimony from approximately 15-20 witnesses. At the end of phase 1, the jury

---

[1]  The equitable claim is alleged in plaintiff's Fourth Amended Complaint, Doc. 136, at p. 22, ¶38 and p. 41, ¶4.

[2]  This phase would include any remaining State Law claims against Arevalos which require adjudication. The liability of the City as to these claims is purely vicarious and not direct. Gov't Code §§ 815(a) and 815.2.

would return a verdict identifying the amount of plaintiff's compensable damages, if any, and whether punitive damages should be awarded against Arevalos. Phase 2, if necessary, would consist solely of the jury's determination of the amount of any punitive damages awarded against Arevalos. Phase 3, if permitted (and the City believes it would not), would be the months-long trial against the City on the *Monell* allegations. The jury would then be excused. If the court determines plaintiff has a case or controversy remaining before the court, plaintiff may introduce evidence in a bench trial to establish her equitable claim for imposition of a monitor in SDPD. However, it appears plaintiff will be unable to meet the requisite four-factor test for this injunctive relief (and it is duplicative of reforms already underway) making dismissal of that claim appropriate.

## II.   PLAINTIFF'S *MONELL* CLAIM AGAINST THE CITY MUST BE BIFURCATED

A court may bifurcate a trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Fed. R. Civ. P. 42(b). "The district court has broad discretion to order separate trials under Rule 42(b) of the Federal Rules of Civil Procedure." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985). "Factors to be considered when ruling on a Rule 42(b) motion include complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy[] and, the possibility that the first trial may be dispositive of the case. [Citations.]" *Calmar, Inc. v. Emson Research*, 850 F. Supp. 861, 866 (C.D. Cal. 1994); *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997) (court should consider "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.")

### A. Bifurcation of *Monell* Claims Against Municipalities is Appropriate and Routine

Courts routinely bifurcate claims against the municipality from claims

against individual officers. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*Monell* claim bifurcated from claim against officer then dismissed because officer exonerated); *Jackson v. City of Bremerton*, 268 F.3d 646, 653-654 (9th Cir. Wash. 2001) (bifurcation of *Monell* appropriate because neither a municipality nor a supervisor can be held liable under § 1983 where no injury or constitutional violation has occurred); *Sanchez v. City of Riverside*, 596 F.Supp.193, 194 (trial bifurcated because "establishing (and defending) against the City's liability under *Monell* [] would be a time-consuming exercise which would, in all probability, be rendered moot by the resolution of plaintiffs' claims against the individual officer."); *Quintanilla v. City of Downey*, 84 F.3d 353, 354-355 (9th Cir. Cal. 1996) (first phase of the trial addressed the excessive force claim against the individual officers, and the second phase was the *Monell* claim against the Chief and City); *Green v. County of L.A.*, 2014 U.S. Dist. LEXIS 5895, 1, 2014 WL 174988 (C.D. Cal. 2014) (same, noting "Courts routinely bifurcate trials when plaintiffs assert municipal liability under *Monell*.").[3]

## B. Bifurcation Will Avoid Undue Prejudice, Juror Confusion, and Consumption of Judicial, City & SDPD Resources

Bifurcation of the *Monell* claim is appropriate to avoid prejudice and ensure a jury's verdict is based upon *this* plaintiff's harm alone, and not on cumulative evidence of an unconstitutional policy, custom or practice, or harm to others. For example, in *Quintanilla, supra*, 84 F.3d 353, the district court, under Rule 42(b), "in the interest not only of convenience and judicial economy but also the avoidance of potential prejudice and confusion, bifurcated the trial of the

---

[3] See also *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (same); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 518 (same); *Murphy v. Long Beach*, 914 F.2d 183, 185 (9th Cir. Cal. 1990) (same); *Santos v. Gates*, 287 F.3d 846, 850-851 (9th Cir. Cal. 2002) (same); *Garcia v. City of Imperial*, 2010 U.S. Dist. LEXIS 105399 (S.D. Cal. Oct. 4, 2010) (same); *Allen v. City of L.A.*, 2012 U.S. Dist. LEXIS 65775 (C.D. Cal. May 7, 2012) (same); *Atencio v. Arpaio*, 2013 U.S. Dist. LEXIS 137783 (D. Ariz. Sept. 24, 2013) (same).

1    individual police officers from the Chief and city." *Id.* at 356. The court excluded
2    from the first phase any evidence of police dog use in situations other than the
3    one involving plaintiff. Plaintiff intended to offer such evidence (which involved
4    photos, videotapes and medical records of *other* dog bite victims) to prove the
5    existence, under *Monell*, of an unconstitutional policy. *Id.* at 355. The Ninth
6    Circuit affirmed the district court's ruling, stating, "plaintiff's strategy was to
7    convince the jury to award him damages on the strength of evidence concerning
8    police dog attacks on *others*." *Id.* at 356; emph. added. Admitting evidence
9    pertaining to the *Monell* issue in the first trial phase could have been unfairly
10   prejudicial and confused the jury. *Ibid.*

11        Similarly, in *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 518 (9th Cir.
12   Cal. 1999) the appellate court did not disturb the district court's ruling precluding
13   plaintiff from offering any evidence in the first phase of trial to prove the
14   existence of an unconstitutional dog bite policy under *Monell* because that
15   evidence was relevant only to the second phase of the trial in which the *Monell*
16   liability of the City and Chief Gates would be determined. Recently, in the case
17   of *Atencio v. Arpaio*, 2013 U.S. Dist. LEXIS 137783, 14-16 (D. Ariz. Sept. 24,
18   2013), a district court considered the prejudice that could result from a non-
19   bifurcated trial because the plaintiff's *Monell* claims were based on what the
20   complaint characterized as a "long history of [] gratuitous and inhumane use of
21   excessive force" in the Maricopa County jails. *Ibid.* Plaintiff sought to establish
22   his *Monell* claim based upon "events that occurred more than 20 years ago, long
23   before the individual defendants were employed with Maricopa County."
24   Bifurcation was therefore necessary in order to avoid prejudice.

25        In *Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005) the district court noted
26   that "cases in which courts have bifurcated whether there has been an underlying
27   constitutional violation from *Monell* liability for trial have all involved claims
28   against individual officers as well as against the municipality. Bifurcation is

4

1  appropriate in such a situation to protect the individual officer defendants from

2  the prejudice that might result if a jury heard evidence regarding the municipal

3  defendant's allegedly unconstitutional policies." *Id.* at 633. Evidence which may

4  be relevant for a *Monell* claim, such as evidence of alleged or sustained

5  misconduct by other officers, personnel complaints, and other prior alleged

6  misconduct must be excluded in the first phase of trial under Federal Rule of

7  Evidence 404(b) because such evidence "of other crimes, wrongs, or acts is not

8  admissible to prove the character of a person in order to show action in

9  conformity therewith." *Allen v. City of L.A.*, 2012 U.S. Dist. LEXIS 65775, 9-10

10  (C.D. Cal. 2012).[4]

11      Here, the evidence plaintiff intends to present for her *Monell* claim and her

12  equitable claim for a monitor would create a substantial danger of undue

13  prejudice against Arevalos and ultimately the City, who is statutorily obligated to

14  indemnify Arevalos. See California Gov't. Code § 825(a). The first phase of trial

15  must exclude all *Monell* evidence in order to ensure that the jury makes its

16  determination of plaintiff's claimed damages based solely on evidence of what

17  occurred on March 8, 2011, and not on 20 years' worth of evidence pertaining to

18  general misconduct of various officers, Arevalos' misconduct against other

19  women, or other allegedly bad conduct by Arevalos in general, or the claimed

20  existence of a code of silence. Any punitive damage award against Arevalos

21  *personally* cannot be based upon evidence of a policy, custom or practice of the

22  *City*. Like the plaintiff in *Ruvalcaba*, Jane Doe must not be allowed to rely upon

23  evidence of other incidents in order to inflame the jury and increase her own

24  potential damage award. Jane Doe is not entitled to a windfall based upon the

25

26  [4] See also *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993) (excluding evidence
    of prior acts of police officer in civil rights case); *Maddox v. City of Los Angeles*,
27  792 F.2d 1408, 1417 (9th Cir. 1986) (admission of internal affairs investigations
    deemed unduly prejudicial under Fed. R. Evid. 403 because jury may give
28  "unfair or undue weight" to such evidence).

collective misconduct of various police officers or even Arevalos himself. "Equity abhors a windfall." *CGI Techs. & Solutions, Inc. v. Rose*, 683 F.3d 1113, 1125 (9th Cir. Wash. 2012), quoting *US Airways, Inc. v. McCutchen*, 663 F.3d 671, 679 (3d Cir. 2011).

Rather, the jury must only be presented with evidence of *Jane Doe's* harm arising out of the March 8, 2011 incident and evidence of her resulting claimed damages. Jane Doe's injury is the same regardless of whether Arevalos engaged in other misconduct or whether a code of silence existed at SDPD which allowed Arevalos to behave as he allegedly did on March 8, 2011. The jury's determination of plaintiff's damage amount must not be tainted by other evidence which is relevant solely for a direct liability determination of the City under *Monell*. Furthermore, trial on the *Monell* claim and monitoring claim could last months. The City anticipates anywhere from 100-200 witnesses will be called to testify in relation to the *Monell* claim, based upon the parties' disclosures to date.[5] Most of the evidence in this case has nothing to do with March 8, 2011, Jane Doe or even Arevalos, but will be offered to establish plaintiff's *Monell* claim regarding a "code of silence." Trial on the claims against the City will be protracted, will be costly to the City and SDPD, will disrupt SDPD operations, and will have no relevance to Jane Doe's claimed damages caused by what happened to her on March 8, 2011.[6]

## C. California's Indemnification Statutes Make Plaintiff's *Monell* Claim Moot

Bifurcation of plaintiff's *Monell* claim against the City is logical here because plaintiff's *Monell* claim will be rendered moot after the damages phase is complete. Although the City cannot be held directly liable for the constitutional torts of its employees under a *respondeat superior* theory per

[5] See Exhibits 2, 3, and 4; Declaration of Michelle L. Gearhart, ¶¶2-14.
[6] See Declaration of Chief Shelly Zimmerman at ¶_5.

*Monell*, California's indemnity statutes effectively eliminate the application of *Monell* in this State. Government Code section 825(a) requires municipal employers to indemnify employees for "***any*** claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity..." It is well-established that these indemnification provisions are applicable to claims brought under the California Tort Claims Act as well as claims based upon federal law, including 42 U.S.C. § 1983. *Williams v. Horvath*, 16 Cal.3d 834, 842-843 (Cal. 1976).

California's indemnity statutes render plaintiff's *Monell* claim moot. "[S]ince the City indemnifies its employees for damage awards made against them in respect of the torts they commit in the course of their employment, [plaintiff] will collect his judgment in full whether or not the City is held liable." *Choate v. County of Orange*, 86 Cal. App. 4th 312, 329 (Cal. App. 4th Dist. 2000), citing *Jones v. City of Chicago,* 856 F.2d 985, 995 (7th Cir. 1988); see also *Sanchez v. City of Riverside*, 596 F.Supp. 193, 195 (C.D. Cal. 1984) (issue of 'government custom' rendered hypothetical by the City's recognition of its obligation under state law to pay the judgment); see also Hamilton, *The Importance and Overuse of Policy and Custom Claims: A View from One Trench* (1999) 48 DePaul L.Rev. 723, 730.

Once plaintiff's damages, if any, are determined in phase 1, there will be nothing further to adjudicate. See *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 523-524 (1999) ("one-satisfaction rule" precluded plaintiff from seeking further monetary award for the same injuries for which he was already compensated in phase 1). Plaintiff will be unable to proceed with the *Monell* phase for symbolic nominal damages because she has not alleged against the City a "separate and distinct [constitutional] wrong" from that alleged against Arevalos. In cases where plaintiffs have been allowed to proceed with the *Monell* trial phase, the plaintiffs were entitled to pursue nominal damages against the

City and punitive damages against Chief Gates in his individual capacity because they had alleged against the City and Chief Gates "separate and distinct wrongs." See *Larez v. Los Angeles*, 946 F.2d 630, 640 (1991) (plaintiffs could proceed with second phase of trial against City and Chief Gates for nominal damages because plaintiffs alleged Gates and City committed constitutional violations **distinct** from those committed by individual officers); *Chew v. Gates*, 27 F.3d 1432, 1437 & 1439 (1994) (plaintiff had alleged constitutional violations against the other defendants which were **distinct** from those alleged against Officer, making summary judgment improper); *Ruvalcaba, supra,* 167 F.3d at 524 ("Even though Ruvalcaba has been fully compensated for his injuries, he may still recover nominal damages for a "separate and **distinct** [constitutional] wrong" irrespective of whether he is entitled to actual damages for that wrong.").

Like the plaintiffs in *Choate* and *Sanchez,* Jane Doe alleges the same constitutional harm against both Arevalos and the City. Plaintiff's complaint merely alleges different theories of *causation* for that constitutional injury. Plaintiff alleges that although Arevalos engaged in the unconstitutional conduct at issue on March 8, 2011, he did so as a result of the failures of the City to properly screen him, train him, discipline him, and terminate him, and that Arevalos was empowered to act as he did based upon the existence of a "code of silence."[7] Plaintiff's constitutional harm and her damages are the same regardless of the *cause* of that harm (*i.e.,* Arevalos' independent tortious conduct versus an SDPD policy, custom or practice). Furthermore, in *Larez, Chew* and *Ruvalcaba,* plaintiff could still recover punitive damages against Chief Gates in his individual capacity, making a second trial phase necessary. Here, former Chief Bejarano and former Chief Lansdowne are no longer defendants. A *Monell* phase is not required to distinguish the *individual* liability of the Chief from his *official*

---

[7] See Plaintiff's Fourth Amended Complaint, Doc. 136, at ¶¶ 9, 10, 11, 17, 24, 25, 26, 27, 33, 34, 36, 38, 48, 55, 60, 67, 74, 83, 89, 95, 102, 109, and 125.

1   liability as a policymaker for purposes of a punitive damage award. Punitive

2   damages are unavailable against the City as a matter of law.

3       After phase 1, plaintiff's *Monell* claim will be moot because whether the

4   City is held directly liable or vicariously liable pursuant to the California

5   Government Code is a distinction without significance. Indeed, several Supreme

6   Court justices have questioned the continuing rationale of *Monell* given the fact

7   that numerous states have statutes that "in effect mimic *respondeat superior* by

8   authorizing indemnification of employees found liable under § 1983 for actions

9   within the scope of their employment." *Board of County Comm'rs of Bryan Cty*

10  *v. Brown*, 520 U.S. 397, 436 (dis. opn. of Bryer, J.); *Choate, supra*, 86

11  Cal.App.4th at 329, n.9. California is one such state. Upon completion of phase

12  1, there will be nothing further to adjudicate and dismissal of plaintiff's

13  remaining claims will be warranted. Bifurcation of plaintiff's *Monell* claim is

14  therefore conducive to expedition and economy as trial on that claim will not be

15  necessary. See *Calmar, Inc., supra*, 850 F.Supp. at 866 (bifurcation appropriate

16  when separation will lead to economy and first trial may be dispositive of the

17  case). Likewise, the first phase here will be dispositive of this case. [8]

18          **D. An Inflamed Jury Will Render an Improper Punitive Verdict**

19      Plaintiff is not entitled to punitive damages against the City as a matter of

20  law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); Gov't. Code §

21

22  [8] In opposing bifurcation, plaintiff may argue that she seeks the imposition of a
    monitor in SDPD and should be allowed to present *Monell* evidence for this
23  purpose. However, the relief plaintiff seeks is equitable in nature and would be
    tried to the Court only, if at all. See *Danjaq LLC v. Sony Corp.*, 263 F.3d 942,
24  962 (9th Cir. Cal. 2001) (no right to a jury exists for equitable claims); *eBay Inc.
    v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (a plaintiff seeking a
25  permanent injunction must satisfy a four-factor test; second factor is no available
    remedy at law); *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (because plaintiff
26  had a remedy at law for the harm he suffered on the date in question, he had no
    standing to seek injunctive relief against LAPD). Additionally, SDPD has
27  already independently implemented the relief plaintiff seeks making the claim
    moot. See Declaration of Chief Zimmerman ¶¶2-4.
28

                                            9

818. However, if plaintiff's *Monell* claim is not bifurcated from her damage claim, plaintiff's attorneys will attempt to elicit a verdict from the jury which is not compensatory in nature but in reality is an improper punitive award against the City. The trial strategy which plaintiff's attorneys will employ is known as the "Reptile," a "plaintiff's revolution" against tort reform, which has taken hold in recent years among the plaintiff's bar. The premise of the strategy is that when jurors are afraid, their instinct for self-preservation will override the part of their brain that thinks or feels. The purpose is to make jurors fear that what happened to the plaintiff could happen to them, and they need to do something to protect themselves, their family and their community from the defendant. The intended result is that the "reptilian" part of the brain will take over and react by "protecting the community" in the form of a large, punishing verdict.[9]

The Reptile can also be used to make a "small" case worth more by focusing "on the jury's opportunity and duty to protect the community." The focus is not on what harm actually occurred to the plaintiff, but on what harm *could* have occurred, and the fact that this potential harm could have been inflicted against the jury.[10] Plaintiff's newest attorneys, adherents of this trial strategy, will no doubt make the focus of this trial about keeping the citizens of San Diego safe, rather than what harm Jane Doe may have suffered on March 8, 2011.[11] The goal of the Reptile strategy is to scare and improperly inflame jurors into rendering a punishing verdict against the defendant. The interests of justice require that trial be bifurcated in order to prevent the very real and substantial danger of undue prejudice against defendants and an improper punitive award against the City.

## II.   CONCLUSION

Pursuant to Federal Rules of Civil Procedure Rule 42(b), the City

---

[9] See Declaration of Michelle L. Gearhart at ¶¶15-17.
[10] See Declaration of Michelle L. Gearhart at ¶18.
[11] See Declaration of Michelle L. Gearhart at ¶19-23.

1   respectfully requests that this court issue an order bifurcating plaintiff's *Monell*

2   claim from her other legal claims, and ordering her legal and equitable claims (if

3   allowed) be tried separately.

4                                                    Respectfully submitted,

5   Dated: April 23, 2014                Daley & Heft, LLP

6

7                            By:  */s/ Michelle L. Gearhart*

8                               Mitchell D. Dean
                                Michelle L. Gearhart

9                               Attorneys for Defendant
                              City of San Diego

10                              E-mail: mdean@daleyheft.com
                                          mgearhart@daleyheft.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28