1  Joseph G. Dicks (SBN 127362)
   Linda G. Workman (SBN 128621)
2  DICKS & WORKMAN ATTORNEYS AT LAW, APC
   750 B Street, Suite 2720
3  San Diego, California  92101
   Telephone:  (619) 685-6800
4  Facsimile:  (619) 557-2735
   Email:  jdicks@dicks-workmanlaw.com
5          lworkman@dicks-workmanlaw.com

6
   Daniel K. Balaban (SBN 243652)
7  Andrew J. Spielberger (SBN 120231)
   BALABAN & SPIELBERGER, LLP
8  11999 San Vicente Boulevard, Suite 345
   Los Angeles, California 90049
9  Telephone: (424) 832-7677
10 Facsimile: (424) 832-7702
   Email: daniel@dbaslaw.com.com
11         andrew@dbaslaw.com.com

12
   Browne Greene (SBN 38441)
13 GREENE BROILLET & WHEELER, LLP
   100 Wilshire Boulevard, Suite 2100
14 P.O. Box 2131
   Santa Monica, CA   90407-2131
15 Telephone:  (310) 576-1200
   Facsimile:  (310) 576-1220
16 Email:  bgreene@greene-broillet.com

17
   Holly N. Boyer (SBN 221788)
18 ESNER, CHANG & BOYER
   234 East Colorado Boulevard, Suite 750
19 Pasadena, CA   91101
   Telephone:  (626) 535-9860
20 Facsimile:  (626) 535-9859
21 Email:  hboyer@ecbappeal.com

22
   Attorneys for JANE DOE, Plaintiff
23

24
25              **UNITED STATES DISTRICT COURT**

26          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

27
28

---

OPPOSITION TO MOTION TO                    *Doe v. City of San Diego, et al.*
BIFURCATE TRIAL                            Case No. 12-cv-00689-MMA (DHB)

| | | |
|---|---|---|
| 1 | JANE DOE, an individual, | Case No. 12-cv-00689-MMA (DHB) |
| 2 | Plaintiff, | **PLAINTIFF JANE DOE'S OPPOSITION TO DEFENDANT CITY OF SAN DIEGO'S MOTION TO BIFURCATE TRIAL** |
| 3 | v. | |
| 4 | THE CITY OF SAN DIEGO, et al. | |
| 5 | Defendants. | Date:       May 27, 2014<br>Time:       2:30 p.m.<br>Judge:      Hon. Michael M. Anello<br>Courtroom: 3A |
| 6 | | |
| 7 | | Trial Date:  August 12, 2014 |

**TABLE OF CONTENTS**

I.   INTRODUCTION………………………………………………………………1

II.  MUCH OF THE EVIDENCE PROFERRED IN THE FIRST
     PHASE OF TRIAL PROPOSED BY THE CITY, IS THE
     *SAME* EVIDENCE SUPPORTING *MONELL* LIABILITY……………2

III. THE CITY FAILS TO JUSTIFY BIFURCATION OF
     THIS ACTION…………………………………………………………....4

IV.  CONCLUSION……………………………………………………….10

# TABLE OF AUTHORITIES

**Cases**

*Amato v. City of Saratoga Springs, N.Y.*,
 170 F.3d 311 (2d Cir. 1999) .................................................................................. 10

*Atencio v. Arpaio*,
 CIV. 12-2376-PHX-PGR, 2013 WL 5327382 (D. Ariz. Sept. 24, 2013) ........... 6

*C.A. v. William S. Hart Union High Sch. Dist.*,
 53 Cal. 4th 861 (2012) ............................................................................................ 2

*Carey v. Piphus*,
 435 U.S. 247 (1978) ................................................................................................ 9

*George v. City of Long Beach*,
 973 F.2d 706 (9th Cir. 1992) .................................................................................. 9

*Green v. Baca*,
 226 F.R.D. 624 (C.D. Cal. 2005) ....................................................................... 5, 7

*Larez v. City of Los Angeles*,
 946 F.2d at 640 (9th Cir. 1991) ............................................................................. 9

*Quintanilla v. Downey*,
 84 F.3d 353 (9th Cir. 1996) ................................................................................... 5

*Randi W. v. Muroc Joint Unified School Dist.*,
 14 Cal.4th 1066 (1997) ........................................................................................... 2

*Ruvalcaba v. City of Los Angeles*,
 167 F.3d 514 (9th Cir. 1999) .............................................................................. 8, 9

*Wood v. Ostrander*,
 879 F.2d 583 (9th Cir.1989) .................................................................................. 3

**Statutes**

42 U.S.C. § 1983 ............................................................................................................ 9

Government Code section 815.2 ................................................................................. 2

Government Code section 820 .................................................................................... 2

# I. INTRODUCTION

Defendant City of San Diego ("the City") seeks an order from this Court trifurcating trial into three phases: the first phase would determine Plaintiff's damages for the constitutional deprivation, whether punitive damages should be awarded against Arevalos, and any remaining State Law claims; the second phase would determine the amount of punitive damages; and the third phase on *Monell* liability. While the City boasts that trifurcation "must" be granted to conserve judicial resources, as explained below the evidence introduced in the first phase of trial will be the *same evidence* supporting *Monell* liability. Further, the cases cited by the City supporting bifurcation concern cases where *Monell* liability hinged upon an initial finding that the individual officers violated the plaintiff's constitutional rights. Here, as held by this Court,"[i]t *is undisputed that Plaintiff suffered a constitutional deprivation*." Order [Doc. No. 334] at 6. Thus, the central justification for bifurcation of a *Monell* claim is absent here.

Further, the City's position that after the first phase, "plaintiff's *Monell* claim will be moot because whether the City is held directly liable or vicariously liable pursuant to the California Government Code is a distinction without a difference," is troubling to say the least. Mtn. at 9. Throughout this litigation, the City has taken the position that Arevalos was simply a rogue officer who acted alone. Implicit in this "bad apple" theory is the reality that a verdict against Arevalos, even if indemnified by the City, will have little to no effect on the culture of cover up and corruption within the SDPD which led to the constitutional deprivation. Without a finding that the City *itself* is directly liable for the harm suffered by Plaintiff, the City will never publicly take responsibility for what occurred or meaningfully remedy the harms in its policies which caused it. Under the reasoning employed by the City, it would be virtually impossible to ever proceed with a *Monell* claim. The Ninth Circuit however has repeatedly underscored the importance of a *Monell* action such as this one.

## II. MUCH OF THE EVIDNECE PROFERRED IN THE FIRST PHASE OF TRIAL PROPOSED BY THE CITY, IS THE *SAME* EVIDENCE SUPPORTING *MONELL* LIABILITY

Bifurcation is unwarranted since, pursuant to the schedule of phases proposed by the City, Plaintiff will be required to present much of the same evidence *twice*. *Id.* According to the City, the first phase of trial therefore would include Plaintiff's remaining claims against Officer Arevalos and the City (with the only the *Monell* claim excluded). In a footnote in its motion, the City states that this phase "would include any remaining State Law claims against Arevalos which require adjudication. The liability of the City as to these claims is purely vicarious and not direct." Mtn. at 1, fn. 2. While it is true that liability for Plaintiff's remaining negligence and civil rights claims are alleged against the City under a theory of vicarious liability, the offending or negligent employees giving rise to liability are *not limited* to Officer Arevalos. Rather, under California law, negligence against the City may be predicated on the failure of SDPD supervisors to exercise reasonable care in response to claims of sexual misconduct or other deviant behavior by Officer Arevalos. *See C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 879 (2012) (finding that a public school district may be vicariously liable under Government Code section 815.2 for the negligence of administrators or supervisors in hiring, supervising and retaining a school employee who sexually harasses and abuses a student); Gov. Code §§ 815.2 and 820; *see also Randi W. v. Muroc Joint Unified School Dist.*, 14 Cal.4th 1066, 1077-1081 (1997) (vicarious liability against a school district where staff previously employing a teacher with a history of sexual contact with students bore a duty not to misrepresent the teacher's qualifications and character).

As detailed by this Court in its previous orders, there were *several instances* where a supervisory employee was provided knowledge of alleged sexual misconduct by Officer Arevalos and did nothing in response. *See* Order

1  [Doc. No. 334] (detailing evidence of the past incidents concerning the 5150
2  Detainee, Susy S., MP, and Jane Roe); Order [Doc. No. 330] (same).[1] "The
3  history shows that Arevalos survived for over 15 years within the department,
4  despite numerous complaints of sexual misconduct and other deviant behavior.
5  Despite the repeated instances of misconduct, Arevalos' behavior was only
6  *minimally disciplined* and *documented*." Order [Doc. No. 334] at 8.

7  In addition to the actual claims of misconduct, the evidence demonstrates
8  that "Officer Arevalos had built a reputation on the police force for his suspect
9  behavior towards female arrestees." *Id.* at 8-10. Such evidence supports a finding
10 that Arevalos was negligently supervised. "Despite all of Arevalos' problematic
11 behavior, his personnel file contains only documentation of inappropriate
12 computer use, and no other documentation of misconduct." *Id.* As noted by the
13 Court, Plaintiff's expert Robert Taylor opined: "The case not only makes clear
14 that the [prior] victims were not 'mistaken,' but that Officer Arevalos should not
15 have been a police officer–most assuredly by the time that Jane Doe was stopped.
16 Arevalos counted on the protection provided by his superiors and the
17 administration of the SDPD that allowed him to repeatedly stalk, harass, and/or
18 sexually assault female drivers for almost two decades." *Id.* at 13.

19 Thus, to the extent the jury concludes that Officer Arevalos' supervisors
20 failed to exercise the applicable standard of due care and that such negligence
21 was a substantial factor in causing Plaintiff's harm, the City is vicariously liable.
22 The City patently fails to appreciate that the evidence supporting Plaintiff's
23 negligence and California civil rights statutes is the same evidence which

---

[1] While this Court held that such instances did not give rise to supervisor liability under Section 1983, noting that "the Court cannot find any case which imposes personal liability on a supervisor for having knowledge of a single prior act of misconduct on the part of a subordinate," such reasoning would not preclude a finding of negligence. *See* Order granting MSJ for Supervisor Defendants [Doc. No. 330] at 16; *see also Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir.1989) ("[T]he Supreme Court [has] held that mere negligence or lack of due care by state officials does not trigger the protections of the fourteenth amendment and therefore does not state a claim under section 1983.")

supports *Monell* liability.  Likewise, the City ignores that the evidence Plaintiff will set forth in support of her claim for punitive damages against Officer Arevalos is much of the same evidence that supports *Monell* liability.  Officer Arevalos' 15 year history at the SDPD as a sexual predator of women is the very predicate for the imposition of punitive damages here.

Bifurcation of the *Monell* claim is therefore inappropriate since the same evidence supporting *Monell* liability will be presented in the first phase of trial. [2]

### III.   THE CITY FAILS TO JUSTIFY BIFURCATION OF THIS ACTION

To support bifurcation, the City argues "courts *routinely* bifurcate claims against the municipality from claims against individual officers."  Mtn. at 3-4.  But as highlighted by Plaintiff in prior briefing,[3] and ignored by the City, the cases cited by the City involve situations where the existence of a constitutional violation had not yet been established.  *Id*. The issue of whether there has been an underlying constitutional violation is bifurcated from *Monell* since, as addressed in these decisions, the failure to prove the underlying constitutional violation may prove fatal to the plaintiff's claim against the City for *Monell* liability.  As such, bifurcation is appropriate to conserve judicial resources since the first trial may dispose of any need for a second trial on *Monell*.

However, here the underlying constitutional violation has already been established.  "*It is undisputed that Plaintiff suffered a constitutional deprivation. The primary source of dispute is whether Plaintiff has produced sufficient evidence from which a reasonable jury could conclude that the City is liable under section 1983 for deprivation.*" Order [Doc. No. 334] at 6.  After considering the evidence before it, this Court concluded: "Plaintiff has presented

---

[2] Plaintiff objects to the time estimates proffered by the City.  Plaintiff estimates that the trial in this action (including the *Monell* claim) will take approximately 3-4 weeks.  (Decl. J. Dicks at ¶3.)
[3] *See* Plaintiff's Opposition to the City's Ex Parte Application for a Scheduling Order Setting an Early Hearing Date and Briefing Schedule for City's Motion to Bifurcate [Doc. No. 346], filed April 18, 2014.

1  sufficient evidence of a code of silence that exists within the SDPD, and which
2  could constitute the moving force behind her constitutional injuries." *Id*. at 7-8.
3  Thus, the justification tendered in the cases cited by the City is wholly *absent* in
4  the present matter, where the constitutional deprivation is undisputed.

5    In *Green v. Baca,* 226 F.R.D. 624 (C.D. Cal. 2005), a case cited by the
6  City in its motion (Mtn. at 4-5), the district court denied the defendant's motion
7  for bifurcation noting that regardless of the result in the first purposed phase of
8  trial, a second phase of trial on *Monell* liability would still be necessary.  *Id*. at
9  630-633.   The district court explained that it is "essentially undisputed" that the
10 plaintiff suffered a constitutional violation, and the "principal issue at trial will be
11 whether defendant's policies and customs were the moving force behind a
12 deprivation of plaintiff's constitutional rights." *Id*. at 630-631.  This is precisely
13 the situation here.  Regardless of what happens in the first phase of trial, a second
14 phase will be required as to Plaintiff's claim against the City for *Monell* liability.

15   Similar to the City, the defendant in *Green* cited *Quintanilla v. Downey*, 84
16 F.3d 353 (9th Cir. 1996) as purported support for bifurcation.  *Green*, at 632.
17 "*Quintanilla* differs from this case, in that one of the core issues there in dispute
18 was whether the officers' use of the police dog amounted to excessive force that
19 violated the plaintiff's constitutional rights."  *Green*, at 632.  This same
20 distinction is present here where there is no core issue as to whether Plaintiff
21 suffered a constitutional violation.  Just as in *Green*, the first phase of trial will
22 not dispose *Monell* liability against the City.[4]

23
---
24 [4] *Quintanilla* is further distinguishable as there, after the district court bifurcated the trial of the liability of the individual police officers from the *Monell* claim,
25 the plaintiff *sought to dismiss* the officers from the suit in the hopes that evidence of *Monell* could be presented during the first phase when the jury had to determine whether the plaintiff suffered a constitutional violation. *Quintanilla*, at
26 355-356. The district court rejected this effort and after the jury returned a special verdict finding that the plaintiff suffered no constitutional violation, the court
27 entered judgment for the City.  *Id*. at 355. The Ninth Circuit affirmed on appeal noting that the plaintiff could not circumvent the bifurcation and evidentiary
28 rulings by voluntarily dismissing the three individual officers.  *Id*. at 356.

1    Defendant's further citation to the Arizona district court's ruling in *Atencio
2    v. Arpaio*, CIV. 12-2376-PHX-PGR, 2013 WL 5327382 (D. Ariz. Sept. 24, 2013)
3    also fails. Mtn. at 4. In *Atencio*, the district court bifurcated the *Monell* claim
4    from the claims of excessive force against the individual officers. The court
5    explained: "Here, all of Plaintiffs' claims are contingent on the use of excessive
6    force. Without a finding that excessive force was used in violation of Atencio's
7    constitutional rights, *there can be no Monell claim* against the County." *Id*. at *4.
8    Again, here the constitutional violation has already been established.

9    As to the element of prejudice, the court in *Astencio* noted that bifurcation
10   was also appropriate to avoid any prejudice "to the *individual officers*" in the
11   liability phase of the trial where the jury had to decide whether the plaintiff
12   suffered a constitutional violation. *Id*. at *4-5. This justification for bifurcation
13   is not present in the instant matter where the *only* individual defendant is Officer
14   Arevalos.[5] Here, there is simply no risk that the evidence supporting Plaintiff's
15   *Monell* claim will unduly prejudice Officer Arevalos since it has already been
16   established that Plaintiff suffered a constitutional violation *by Officer Arevalos*.
17   The other cases cited by Defendant likewise all involve prejudice suffered by th*e*
18   *individual officers* – where the jury is tasked with determining whether those
19   individual officers violated the plaintiff's constitutional rights. *See* Mtn. at 4-6.
20   This risk of prejudice is absent here where it has already been determined that
21   Plaintiff's constitutional rights were violated by Officer Arevalos.

22   Furthermore, as explained above, most of the evidence supporting the
23   *Monell* claim will be admitted against Officer Arevalos to support Plaintiff's
24   claim for punitive damages. The long history of sexual abuse by Officer
25   Arevalos, condoned by the City, is the *same evidence* upon which the jury may
26   find "malice" to support punitive damages. To suggest that bifurcation is

---

[5] Pursuant to this Court's order granting summary judgment for the supervisory defendants, all other individual defendants have been dismissed.

1  appropriate since the *Monell* evidence will unduly prejudice Officer Arevalos is
2  unreasonable since the bulk of the *Monell* evidence concerns prior conduct of
3  Arevalos *himself*. It is precisely because Arevalos survived for over 15 years
4  within the department despite numerous complaints of sexual misconduct, that
5  Plaintiff was injured. The evidence detailing Officer Arevalos' tumultuous
6  history as a police officer not only gives rise to an award of punitive damages,
7  but also supports Plaintiff's claims for negligence and the *Monell* violation of
8  civil rights alleged against the City.

9       To the extent the City argues that the presentation of *Monell* evidence will
10  prejudice the City, such a contention is misplaced since the *Monell* evidence
11  supports the very claim asserted against the City – *Monell* liability. In essence,
12  the City's position would be that in every case the element of damages must be
13  bifurcated and tried *first,* before liability, since the evidence supporting liability
14  may be "prejudicial" to the defendant. Clearly, this is not the law.

15       In denying the motion to bifurcate, the court in *Green* rejected a similar
16  argument, where the defendant took the position that "permitting the jury to hear
17  evidence regarding defendant's policies and customs would unduly prejudice its
18  determination as to whether plaintiff's constitutional rights were violated." *See*
19  *Green, supra,* 226 F.R.D. at 630, 633. The district court highlighted that courts
20  have bifurcated the issue of whether there has been an underlying constitutional
21  violation from *Monell* liability "to protect the *individual officer defendants* from
22  the prejudice that might result if a jury heard evidence regarding the municipal
23  defendant's allegedly unconstitutional policies." *Id*. at 633 (emphasis added).
24  Since in the action before it there were no claims against any officers in their
25  individual capacities, no such prejudice existed warranting bifurcation. *Id*. On
26  this point, the district court noted: "There is little doubt that evidence presented
27  by plaintiff regarding defendant's alleged policy and custom of being deliberately
28  indifferent to the rights of persons entitled to release will be prejudicial to

defendant.  There is no indication that it will be *unfairly* prejudicial, however.  Rather, it is clearly necessary for plaintiff to introduce such evidence to prove his only claim against defendant—i.e., that defendant's policies and customs caused the deprivation of his federal rights." *Id*. at 633-634 (emphasis in original).

        Citing the Ninth Circuit's decision in *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir. 1999), the City argues: "like the plaintiff in *Ruvalcaba*, Jane Doe must not be allowed to rely upon evidence of other incidents in order to inflame the jury and increase her own potential damage award." Mtn. at 5.  But no discussion in *Ruvalcaba* supports the City's statement.  In fact, the City misrepresents the case as alleged authority for its position that once Plaintiff's damages are determined, "there will be nothing further to adjudicate" and thus the *Monell* claim will be moot.  Mtn. at 7.  The City describes *Ruvalcaba* as holding: "'one-satisfaction rule' precluded plaintiff from seeking further monetary award for the same injuries for which he was already compensated in phase 1." *Id*.  But the passage cited from *Ruvalcaba* was in response to the plaintiff's position that despite the jury's finding that the dog bite did not constitute excessive force in the first phase (but that the officer's actions did constitute excessive force), the plaintiff could recover *further* compensatory damages from the City for his dog bite injuries.  *Ruvalcaba*, at 524.  The Ninth Circuit cautioned that the plaintiff could not recover twice for the same injuries, but explained that "[e]ven though Ruvalcaba has been fully compensated for his injuries, ***he may still recover nominal damages*** for a 'separate and distinct [constitutional] wrong" irrespective of whether he is entitled to damages for that wrong." *Id*. Thus, the Ninth Circuit's decision in *Ruvalcaba* does not support any claim of prejudice by the City here.[6]

---

[6] This is not the only time the City misrepresents *Ruvalcaba* in its motion.  The City originally cited the decision as purportedly upholding a district court's ruling precluding evidence of *Monell* in the first phase of trial concerning whether the officers and their dog used excessive force against the plaintiff.  Mtn. at 4.  But that was *not* the issue addressed by the Ninth Circuit.  In fact, the

If anything, *Ruvalcaba* highlights the Ninth Circuit's position on the need for *Monell* actions to go forward even if only nominal damages are at stake and dispels the City's argument that Monell liability here would be moot after the damages phase. *Ruvalcaba*, at 524. While the City cites California state appellate decision and other non-binding authority as to the viability of *Monell* where damage awards against individual officers are indemnified by the City, the City ignores Ninth Circuit precedent on this very issue. Mtn. at 7-9. The Ninth Circuit has repeatedly underscored that the importance of vindicating constitutional rights requires permitting a plaintiff to proceed against the municipality, despite the fact that only nominal damages are at issue. *See Ruvalcaba*, at 524; *George v. City of Long Beach*, 973 F.2d 706 (9th Cir. 1992) (emphasizing need for "symbolic vindication" of violations of constitutional rights); *Larez v. City of Los Angeles*, 946 F.2d at 640 (9th Cir. 1991) (discussing importance of vindicating constitutional rights, even through symbolic awards)[7]; *see also Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (Supreme Court introduced the availability of nominal damages in a § 1983 action because of the "importance to organized society" that constitutional rights be respected, even where a plaintiff failed to establish actual injury); *Amato v. City of Saratoga*

---

pinpoint cite provided by Defendant referenced the procedural posture of the case. *Id*. The issue addressed by the Ninth Circuit was whether the district court's ruling *dismissing* the *Monell* claim following the jury's verdict that the plaintiff had suffered no constitutional injury *from the dog,* but did suffer constitutional injury from the officer's conduct, was appropriate. *Ruvalcaba*, at 519-520, 523-524. As to that issue, the Ninth Circuit reversed the order of dismissal noting that *Monell* liability could still proceed under the theory that the officers' excessive force was in furtherance of the City's dog bite policy. *Id*. at 523-524.

[7] The City's attempt to distinguish *Larez* and *Ruvalcaba* on the ground that there the nominal damages sought to recover for "separate and distinct" constitutional violations (Mtn. at 8) is puzzling as just as in those cases the evidence here implicates a custom and policy which led to the constitutional deprivation suffered by the plaintiff. Here, SDPD's failures to report misconduct, appropriately discipline misbehaving officers, and *de facto* policy where officers cover up, interfere with, and impede misconduct investigations, created an environment where officers like Arevalos could act with impunity, and where instances of sexual misconduct against females were commonplace. Nominal damages are therefore recoverable for the City's direct liability under *Monell*.

1  *Springs, N.Y.,* 170 F.3d 311, 320 (2d Cir. 1999) [after noting its agreement with
2  the Ninth Circuit, the Second Circuit held: "Precisely because nominal damages
3  afford a litigant vindication of the deprivation of his constitutional rights, the
4  decision to dismiss a plaintiff's claim against a municipality because only
5  nominal damages are at stake is error."].

6       A judgment against a municipality not only holds that entity responsible
7  for its actions and inactions, alerts the municipality and its citizenry to the issue,
8  but also hopefully results in meaningful reform of the patterns and practices that
9  led to constitutional violations.  *See Amato,* at 320.

10      Lastly, the City's challenge to the equitable remedies sought by Plaintiff
11 under *Monell* is entirely inappropriate in a motion to a bifurcate. Mtn. at 9. The
12 City cannot seek to adjudicate the equitable relief available upon a finding of
13 *Monell* liability by simply claiming (in a footnote) that it has seen the light and
14 changed its ways and thus no equitable relief is necessary. *Id.*  Likewise, the
15 City's discussion of Plaintiff's counsels' alleged adherence to a purported
16 "Reptilian" approach to prosecuting this case  is not only an unjustified and
17 inappropriate personal attack, but is entirely unsupported by *any* evidence
18 (defense counsel's declaration falls woefully short of setting forth evidence that
19 Plaintiff is engaging in this supposed strategy here) and misplaced in this motion
20 to bifurcate. *See* Mtn. at 9-10.  Should any alleged attorney misconduct take
21 place, the City could file an appropriate motion to address it.  The City's bald
22 accusations of a purported unfair trial strategy does not support bifurcation.

## IV. CONCLUSION

24      For all of the above reasons, the City's motion for bifurcation should be
25 denied in its entirety.

26 Dated: May 12, 2014      */s/ Joseph G. Dicks*
27                                      Joseph G. Dicks,
28                                      DICKS & WORKMAN ATTORNEYS AT LAW, APC
                                     Attorneys for JANE DOE, Plaintiff